MOORE and another *v.* OCEANIC STEAM NAV. Co. and others.

(*District Court, S. D. New York.*   June 8, 1885.)

1. WHARF—LESSEE TO REPAIR.
 A lessor who has let a wharf and slip, and delivered exclusive possession to a lessee who covenants to repair, is not liable for damages that happen through obstructions that arise subsequently, of which the lessor has no notice.

2. SAME—DAMAGE TO BARGE.
 A barge loaded with coal having been sunk by a concealed pile near the shore end of the slip, *held*, upon the proofs, which were insufficient to show with certainty how the pile came there, that it was probably a water-soaked log which had become imbedded in the mud, and was not there when the city, 10 years before, leased the premises to the defendant company, and that the city was not, therefore, liable. *Held, further,* on the same grounds, that the defendant company was not liable, because that part of the premises where the barge was sunk had been underlet several years previously, and exclusive possession given to another company not sued, that had covenanted to keep the premises in repair; and it not being proved and not being probable that the obstruction was there when the under-lessees took possession, and the under-lessors, defendants, having no notice of the obstruction prior to the accident.

In Admiralty.

*Carpenter & Mosher,* for libelants.

*Hawkins & Gedney,* for steam-ship company.

*E. Henry Lacombe,* for the mayor, etc.

BROWN J.   The measurements in regard to the position of the libelants' boat when sunk, and the place of the hole in the bottom, when compared with the drawings of the position of the old pier, show pretty conclusively that the pile which caused the damage was within the interior lines of the northerly projection from the former pier. That projection was a crib-dock.   There is evidence that piles were driven as fenders along its exterior sides; but the pile in question was, as I have said, in the interior of those lines, and must have been several feet distant from any of them.   This shows that the pile that caused this injury is different from any one of those shown in the drawings submitted, and different from any one known to exist.   There are only two hypotheses to account for it: one, that it may have been a pile driven in the inside of the crib-dock for the purpose of fastening it when first brought there, or while in course of construction; the other, that the pile was a water-soaked drift log, which had become casually imbedded in the bottom, so as to form an obstruction.   Either of these hypotheses is possible.   There is no proof as to which is the fact.   So far as the evidence shows, there was no pile used in building the crib-dock; yet it is possible that such a pile may have been driven down.   But there are strong circumstances against the probability of this explanation.

The location of this pile is shown to be from one to three feet westward of the front line of the present platform of the Oceanic Company, extended, and some 20 feet to the southward of its south-westerly corner.   This spot is certainly within the limits that the testi-

mony shows were repeatedly dredged and dragged for the purpose of removing such piles in 1874, and since; and it is scarcely possible that this pile could have been left, at that time, sticking at least two feet above the mud bottom, without being noticed and drawn out. With the lapse of time, moreover, the mud in slips is not lessened, so as to uncover piles which were previously even with the bottom, but is increased so as to fill up the slip and cover such obstructions. Again, it seems very improbable that a pile projecting two feet above the mud bottom should have remained, during this long period, outside of the line of the platform of the wharf, and no boat or vessel touch it. On the other hand, it is in proof that it is not uncommon for old logs or piles to be water-soaked, and, being unequally heavy at the different ends, to sink more at one end, and thus become gradually imbedded in the mud, while the other end projects above the bottom, and becomes an obstruction. On the whole, I think this is the most probable explanation. Upon dredging, after this accident, two such piles were found not far from this location, besides others driven deep through the riprap.

Treating the damage as done through some drift spile, thus accidentally imbedded in the mud, no sufficient ground appears for holding either defendant liable, considering the careful dredging that is proved to have been done. The city, in 1874, leased the slip to the Oceanic Company, granting, not the mere right of wharfage, but exclusive use and possession of the pier and slip. The pile cannot, I think, have been there at that time. It must have come there since. The Oceanic Company agreed to do all repairs, and to keep the slip clear. They, or their under-lessees, have been in exclusive possession ever since. No notice of any such subsequent obstruction ever came to the knowledge of the officers of the corporation, and no negligence is, therefore, chargeable upon it.

The Oceanic Company, several years ago, underlet that portion of the premises upon which this accident happened to the Citizens' Company. The latter company, by this sublease, undertook to perform all the obligations of the Oceanic Company in its lease from the city. Full and exclusive possession was taken and has been continued by the sublessees. They have not been sued. It does not appear that the spile that did the injury was there at the time when the Oceanic Company made its sublease; and it is not probable that it was there then; and if it came there since, inasmuch as the Oceanic Company had no notice of its existence, that company must be held exempt on the same ground that the city is exempt, viz.: That the slip not being in bad order at the time of the lease, the lessor, when exclusive possession is transferred to the lessee, who covenants to keep in repair, is not liable for a subsequent obstruction of which he has no notice. Per WOODRUFF, J., in *Taylor* v. *Mayor*, 4 E. D. Smith, 559, 261; *Swords* v. *Edgar*, 59 N. Y. 28.

I must find, therefore, that the libelants have not shown any neg-

ligence or any breach of legal obligation on the part of either of the defendants sued in this action. Without referring, therefore, to the other questions presented, I am constrained to dismiss the libel; but without costs.