SOUTHERN INDIANA RAILWAY COMPANY *v.* McCARRELL.

[No. 20,337. Filed May 24, 1904. Rehearing denied November 2, 1904.]

RAILROADS.—*Public Crossings.*—*Duty to Keep Safe.*—It is the duty of a railroad company to maintain all public crossings safe, and where it is shown that as a part of a general system of road improvement the board of commissioners has ordered a grade changed to an overhead crossing, such company furnishing the abutments only and the county undertaking to make the approaches, which were left without any guardrails, such company is liable to a traveler injured by reason of failure to place guards along such approaches, since by §5172 Burns 1901 it is

the imposed duty of a railroad company to keep and maintain such crossings safe, and this duty can not be delegated nor shifted to another. *pp. 472, 473.*

RAILROADS.—*Instructions.*—Where a railroad company does not contend that it has kept a highway crossing in a safe condition as provided by statute (§5172 Burns 1901), it is not prejudicial error for the court to instruct the jury that it is the duty of a railroad company to maintain such crossing in a "safe" condition. *pp. 474, 475.*

COSTS.—Where a change of venue from L. county was taken upon an imperfect transcript by plaintiff, and defendant appeared at O. county, to which such cause had been sent, and asked another change of venue, which was not perfected, the cause set for trial, and after the witnesses had appeared for such trial, the defendant objected to such imperfect transcript, which objection was sustained and the cause set for trial at the next term, the costs of such witnesses are properly taxed to the defendant against whom the issue was found. *p. 475.*

From Orange Circuit Court; *Thomas B. Buskirk,* Judge.

Action by Charles McCarrell against the Southern Indiana Railway Company for damages for personal injuries. From a judgment for plaintiff rendered on a verdict for $3,500, the defendant appeals. Transferred from the Appellate Court under § 1337u Burns 1901. *Affirmed.*

*F. M. Trissal, T. J. Brooks* and *W. F. Brooks,* for appellant.

*C. C. Matson* and *Joseph Giles,* for appellee.

HADLEY, J.—This action is for personal injuries alleged to have been sustained by appellee because of the negligence of appellant in maintaining a highway crossing over appellant's railroad.

The facts shown by the record, and which are material to a decision of the cause, are these: In 1890 the company constructed its railroad at grade over and across the highway known as the Bedford & Bloomington road. At the point of intersection was a cut several feet deep. The crossing was put by the company in a safe condition for public travel, and was so maintained until the year 1893. At that time the board of commissioners of the county pro-

ceeded, under the free gravel road laws, to construct a turnpike on said highway. In building said turnpike the commissioners caused the said railroad grade crossing to be changed to an overhead crossing, and, without the express consent of the company, caused the erection of an overhead wooden bridge across appellant's railroad. It also made the necessary approaches thereto, about twenty feet high, for the accommodation and convenience of travelers. Since then the commissioners and other officers of the county charged with the care and maintenance of highways have assumed and exercised full control and management of said crossing and the approaches thereto. In 1898 the board of commissioners decided to replace said wooden bridge with an iron superstructure, and the railroad company, upon the solicitation of the commissioners, erected upon its right of way substantial stone abutments, eighteen feet high above its tracks, for the proposed iron bridge to rest upon. The iron bridge was built over and across appellant's railroad, upon the abutments so furnished, and the approaches thereto were so constructed and thereafter maintained by the road officers of the county and townships. No guardrail or other barrier was erected for the protection of travelers using such approaches. On February 7, 1902, appellee and another were driving in a sleigh across said bridge and railroad. When they had just passed off the bridge and onto the descending approach, the horse shied, and, because of the narrowness of the approach, and its want of protection by a guard or side-rail, threw sleigh and riders violently down the embankment, a distance of thirty feet, whereby appellee was injured. The negligence charged is the failure of appellant to maintain the crossing in a safe condition. Upon the issues joined there was a trial by jury, and a verdict and judgment for appellee.

The principal question for decision, and which arises upon divers assignments of error, may be stated thus: Un-

der the circumstances stated, is the railroad company liable for the injury to the appellee? That the crossing had been in an unsafe condition for an unreasonable length of time is not controverted. The real question is whether appellant is responsible for it.

Appellant's contention is that a mode of crossing having been adopted by the company, as warranted by §5172 Burns 1901, and the highway restored to and maintained in its former state of usefulness as a highway, an arbitrary change of the character of the crossing by the highway authorities of the county relieved the company from liability for injuries resulting from the defective manner in which such officers constructed and maintained the work. The argument is that as the county had the superior supervision and control of highways its voluntary exercise of the right to change the mode of crossing, and to construct and maintain it in a manner of its own choosing, released appellant from liability for mistakes and omissions of the highway officers in building and maintaining the approaches to such bridge. We are unable to perceive how a railroad company can relieve itself from responsibility for a defective and unsafe condition of such a highway crossing of its railroad. A railroad company takes its franchises and right of way subject to the condition that it will carry the public highways across its railroad in such a manner as not to interfere with the free use of the same, and as will afford security for life and property. §5153 Burns 1901, subd. 5. It may carry the highway under or over the track, as appears most expedient to secure a free and safe passage. It may also change the location of the highway, and condemn land outside its right of way whenever necessary for the construction of such approaches as will preserve the reasonable safety and usefulness of the highway. §5172, *supra*. The spirit that pervades all our legislation and decisions concerning such crossings invests railroad companies with ample power, and imposes upon them

the imperative duty to provide, as far as they reasonably can, against increased inconvenience and danger to public travel in crossing their tracks. The company must not only construct but must keep the crossing and approaches in a safe and suitable condition for the use of travelers. *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189; *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261; *Evansville, etc., R. Co.* v. *Carvener* (1887), 113 Ind. 51.

The duty of reëstablishing and maintaining at crossings preëxisting safe and convenient situations is statutory, is an implied covenant of the charter contract, and can not be laid aside or upon the shoulders of another. It is a duty the company can not abdicate while exercising its franchise. Neither can it be said that a railroad company is excused by the construction and maintenance of a crossing which at the time of construction was suitable to public requirements. It must keep pace with the times, with the increase of public travel, with the change of methods, with the improvement of highways, and will not be permitted, by adherence to an old plan, originally adequate, to thwart a general improvement system the public may desire to make for the increased  ease and convenience of the traveling public. So it has been held that a railroad company may be compelled by mandamus to lower the grade of its roadbed to conform to the grade of a street. *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237. See, also, *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189; *Lake Erie, etc., R. Co.* v. *Shelley* (1904), *ante*, 36.

1. Appellant pleads that the highway authorities of the county entered upon its right of way and built the overhead bridge and approaches without its knowledge or consent. It is not shown that appellant had anything to do with the construction of the approaches, but it is found by the jury, in answer to an interrogatory, that in 1898, four

years before the plaintiff was injured, the appellant erected upon its right of way substantial stone abutments, eighteen feet high and nineteen feet wide, for the support of an iron bridge across its tracks, which was to take the place of the old and wooden structure. It is therefore certain that at that time the company approved and ratified the overhead crossing, and, beyond all question, it was from that moment required to take notice that in making the bridge a part of the highway, for which it was designed, suitable approaches must be made and maintained. It was bound to know that to secure its right to lay its tracks and run its cars across the highway, the corporation had impliedly agreed to protect the public against additional burdens or perils caused thereby, so far as the same could be reasonably accomplished, and, when the public need required an improvement of the highway, as had been lawfully determined in this case, it became the duty of appellant to coöperate with the public officials and carry the highway across its right of way in a manner to conform to the general system of improvement without expense to the public. The approaches were as much a part of the crossing as the bridge itself, and, if appellant stood by and permitted others to undertake to build them, and do that which the law required it to do, and the work was performed in an unskilful manner, or the crossing not kept in repair or in good and safe condition, the failure was no less appellant's default because actually attempted by another. It could not shift responsibility for insufficient performance. It was therefore not a material inquiry as to who it was that had undertaken to construct the approaches and keep the crossing in good and safe condition, and the court did not err in its various rulings relating to this point.

2. Complaint is made because the court instructed the jury that it was the duty of a railroad company, in carrying the highway across its right of way, to make the crossing safe for travelers, and to maintain it in a safe condi-

tion.   There is no contention here that the crossing was constructed and maintained in a manner to afford security for life and property, as the statute requires; and, appellant being responsible therefor, it can not be said that it was prejudiced by the instructions complained of, even if the word safe was too narrow as a qualifying term.

3.   Appellant complains of the refusal of the court to order the taxation of certain costs against the appellee. The record discloses that in May, 1902, upon appellee's application, the venue of the cause was changed from the Lawrence to the Orange Circuit Court.   On July 7, 1902, appellant appeared in the Orange Circuit Court and filed its affidavit and motion for a change of venue, whereupon it was ordered that the case be sent to the Washington Circuit Court, and ten days given appellant in which to perfect the change.   The change was not perfected by appellant, and subsequently the order was vacated and the cause set for trial in the Orange Circuit Court, at its October term, to wit, on November 12, 1902.   On the day set the cause was called for trial, and appellant then for the first time objected to the jurisdiction of the court, because of the insufficiency of the transcript and certificate appended thereto by the clerk of Lawrence county.   The court sustained the objection, ordered said clerk to perfect his certificate, and continued the cause generally to the next term. After verdict, appellant moved that all costs made at the October term be taxed to appellee, which motion was overruled, and an exception duly reserved and presented.

Appellant, having appeared to the action in the Orange Circuit Court and filed its affidavit and motion for a change of venue, thereby waived the imperfection in the certificate to the transcript, and submitted to the jurisdiction of that court.   *Smith* v. *Jeffries* (1865), 25 Ind. 376. Therefore, he was not subsequently in a situation to object to a jurisdiction which he had voluntarily accepted by invoking its exercise.

The costs in controversy are those made by the service and attendance of witnesses at the time fixed for the trial at the October term. The court's ruling made a continuance then necessary to enable the appellee to have the transcript perfected, and after the trial had gone against appellant it could not be heard to complain that costs made futile by an erroneous ruling, which it induced the court to make, was not taxed to the party against whom the ruling was made. In other words, appellant can not complain because the court refused to make another suffer for its folly.

We find no error in the record. Judgment affirmed.