MACLAM *v.* HALLAM.

1. LANDLORD AND TENANT— NEGLIGENCE— NUISANCE— HIGHWAYS AND STREETS—OBSTRUCTIONS.

   No liability of a landlord for injuries to a pedestrian is imposed by the common law for the act of a tenant in piling crates on the sidewalk in front of leased premises, and leaving them for a period of four months and upwards.

2. SAME—NUISANCE.

   Such invasions of the public right of travel are not in and of themselves nuisances, although they may become such if the obstruction is not removed within a reasonable time.

3. SAME.

   The owner of premises in front of which such obstructions are placed is not required by law to inspect the property and prevent the creation of the nuisance.

4. SAME—CHARTER—ORDINANCES—MUNICIPAL CORPORATIONS.

   Nor is the duty of the landlord to one so injured increased by provisions in a municipal charter requiring the owner and occupant of any lot to remove or clear away obstructions from the sidewalk, under penalty of a fine; for such enactment creates only a public duty, not a private right of action.

Error to Marquette; Stone, J. Submitted April 13, 1911. (Docket No. 144.)    Decided May 8, 1911.

Case by Robert A. Maclam against Carrie Hallam, Laura Manthei, and Clara Mack for personal injuries. A judgment for defendants on a verdict directed by the court is reviewed by plaintiff on writ of error.    Affirmed.

*J. L. Heffernan,* for appellant.

*A. B. Eldredge* and *A. E. Miller,* for appellees.

OSTRANDER, C. J.   Plaintiff walking upon a sidewalk in the city of Marquette, stumbled or fell over a crate or

crates so placed in the street that the end or ends projected over and upon the sidewalk.  Claiming to have been injured, he brought his action for damages against the owners of the property fronting and abutting upon the street at the point where the obstruction was placed.  Of the seven joint owners or co-owners of the property, three only were served with process, and only those who were served appeared.  The cause coming on for trial, and, a jury having been impaneled, counsel for the plaintiff made an opening statement, in the course of which he was interrupted by counsel for defendants, and was questioned by the court.  The result was that, upon the motion of defendants and upon the pleadings and the said statement of counsel for plaintiff, the court directed the jury to return a verdict for defendants.  Judgment was entered upon the verdict.

It is urged in behalf of appellant that, in determining the issue upon the statement of counsel, the court assumed certain material facts to have been conceded by counsel, notably the facts that the owners were not occupiers of the premises; that a person occupying the premises was occupying wholly in his own right and not for the owners; that the person occupying the premises had exclusive control of them; and that this person placed the crates where they were when plaintiff was injured.  It is said that the court must consider the opening statement to have been at least as broad as the declaration which alleges that defendants were owners and occupiers of the premises, and that there is nothing in the record to indicate that, if the relation between owners and occupier was that of landlord and tenant, the lease was not given when the nuisance (the pile of crates on the sidewalk) existed.

The declaration contains two counts, in each of which it is alleged that defendants were owners and occupiers of certain described premises and of the building thereon occupied and used as a meat market, and the duty of defendants to keep the sidewalk clear of obstructions and in a reasonably safe condition for travel is alleged.  The

breach of duty which is assigned is that defendants permitted and allowed a certain number of poultry crates to be placed and to remain in and upon the sidewalk, creating a dangerous obstruction and nuisance at the place where they were so placed. In his opening, counsel said, among other things, that the crates had been on the sidewalk for four months, and after describing what occurred on the night in question, the following colloquies took place:

"*Mr. Eldredge:* May I ask if you claim these defendants actually put these boxes there?

"*Mr. Heffernan:* No; I don't claim that.

"*Mr. Eldredge:* Will you state the facts with reference to what you do claim in reference to that?

"*Mr. Heffernan:* We do not claim these defendants put those crates there; that they permitted them to remain there for four months, in that position.

"*Mr. Eldredge:* Who do you claim put them there?

"*Mr. Heffernan:* Why, I don't know. I suppose Mr. Manthei. Of course, he is not in the case. They were put there, we are informed, by Mr. Manthei.

"*Mr. Eldredge:* What relation did Mr. Manthei hold to the property?

"*Mr. Heffernan:* I don't know. Mr. Manthei was an occupant of the building. These crates were of various sizes, 4 feet by 2 feet, 6 feet by 1 foot, and other sizes. They were placed on the walk which runs north and south. They were placed over against this pole. This pole was at the rear of the building known as the Mack and Manthei block, opposite the stairway that runs up there. They extended out towards the curb. They had been piled there. There were several piled to extend over the walk 16 to 18 inches, as we claim—or 15 inches.

"*The Court:* Wherein does the second count differ from the first?

"*Mr. Heffernan:* There is not much difference, except a cause of rubbish, and not putting a light. That would really come in under the evidence, I suppose. The people took no measures to protect the public and this plaintiff, by not putting any warning light, or anything of that kind on these crates, and negligently and carelessly suffered them to remain on the walk, or over the walk, a

dangerous obstruction, and that this plaintiff was without any fault.   *   *   *

"*Mr. Eldredge:* Do you claim this liability arises at common law, or under the ordinances of the city of Marquette, or the charter of the city of Marquette, that requires the lot owner to keep the street free from obstruction?

"*Mr. Heffernan:* I claim it arises at common law, supplemental with this statute and charter of the city.

"*Mr. Eldredge:* On that statement of facts I move that the court direct a verdict for the defendants.  Will your honor hear me on it?

"*The Court:*   *   *   *   You base it on his statement to the jury?

"*Mr. Eldredge:* I base it on his statement to the jury as I understand the facts as he states them to be.

"*Mr. Heffernan:* We claim that that was a public nuisance, that obstruction on the walk.

"*Mr. Eldredge:* As I understand it, the proposition is this:  That Mr. Manthei, being a tenant of this building, occupying it, put these crates so that they projected onto the sidewalk; that they remained there three or four months, and that they were a nuisance, and that under the ordinances and charter of the city of Marquette it was made the duty of the lot owner to see that that street was kept clear; that they neglected that duty, and that therefore a liability arises, although they had nothing to do with putting the cases where they were, that having been done by their tenant, Mr. Manthei.

"*The Court:* The question is, Doesn't the charter itself make both the owner and occupant liable?  They have not sued the occupant.

"*Mr. Eldredge:* The charter does make it the duty of the owner and of the occupant.   *   *   *

"*Mr. Heffernan:* Can I supplement that statement a little further?  These particular defendants live in this city—Mrs. Manthei, Mrs. Hallam and Mrs. Mack—and that they ought to have knowledge of these obstructions?  I understand you admit they had knowledge of the obstructions?

"*Mr. Eldredge:* You allege it, for you say they had knowledge of the existence of these crates.  It must be admitted on this motion, for the purposes of the motion only.

"*The Court:* What is your distinct proposition?

"*Mr. Eldredge:* My distinct proposition is this:  That

165 MICH.—44.

the owner of premises who rents them to a third person, either in good condition at the time, and without a covenant to repair, is not liable to third parties for any act of the tenant or for any lack of repair that may thereafter arise upon these premises, or even though the occupant shall create a nuisance; the owner is not liable unless the very nature of the occupation and purposes for which the party rented it was such as to lead inevitably to the creation of a nuisance.

" *The Court:* Now I agree with you on that proposition, at what we term common law. The only question is, whether this charter does not give them a right of action.

" *Mr. Eldredge:* Whether under the charter a right of action is given ?

" *The Court:* That is right.

" *Mr. Eldredge:* The law is settled that the duty that is created by this statute is a public duty by its express terms. It creates no liability to any third persons. The only liability created by this statute is such a liability as may arise when the city itself has been damaged. * * *

" *The Court:* Is there any other provision of the charter, Mr. Heffernan, that Mr. Eldredge has not read, that shows that there is a private liability ? Your proposition is, Mr. Eldredge, between the landlord and tenant there could be no liability as against the landlord unless it appears that he was the active instrumentality in placing the obstruction in the street. That the liability, if any, would be that of the tenant; that the charter speaks simply of a public duty, and gives no right of action to an individual as against the owner or occupant.

" *Mr. Eldredge:* By virtue of the statute.

" *The Court:* By virtue of the statute, yes.

" *Mr. Eldredge:* It takes away no common-law right and does not add any common-law right. It does not make that negligence which before was not negligence, or add any duty, so far as a third party is concerned, to any liability which the landlord already had. * * *

" *Mr. Heffernan:* There are a great many things we could admit in those decisions, but when we get down to the main point in this case, which I think is the main law point, that this thing was a public nuisance which had been permitted to exist for a long time, four or five months, and it should have been abated, and the statute made it their duty to go on and abate it, the question of landlord and tenant would not arise. They had a duty

to abate the nuisance, and, moreover, there is no penalty whatever imposed under that provision on the owner to keep the premises clear.    It is only on the occupant.

"*The Court:* What penalty do you refer to—the ordinance of August 7th?

"*Mr. Heffernan:* There is no penalty for not doing this work, as we can find, on the part of the owner.    He is relieved; but when you take up Cooley on Torts you see where this question comes up fully.    *    *    *

"*The Court:* I had supposed when we started in to try the case, until I commenced to write the title, that Mr. Manthei was a party here.    That you had joined the occupant of the property.    I thought you had probably joined all.    If you could not maintain an action against all, you would discontinue as to some and proceed against the others.    It seems you left out the very party you should have sued.    You claim it is the duty of the landlord, if a nuisance is erected by the tenant, so there could be a liability against the landlord by a private party.

"*Mr. Heffernan:* It makes no distinction.    I think that is the object of this statute.    It was going to make some one liable who could respond in damages.    The city is not liable.    It is manifestly intended for the protection of the individual.    It states specifically what he should do and what would be expected of him.    There is nothing to prevent his doing these things because he is required to do it.    He could go on the premises and abate the nuisance.    We claim it was a nuisance.    For a day or two it might not be.    *    *    *

"*The Court:* There is nothing in your statement to the jury that the owner had control.    You must have in mind we are trying this upon your statement to the jury.

"*Mr. Heffernan:* Under the law we claim that is so.

"*The Court:* That this nuisance was created by the occupant, Mr. Manthei.

"*Mr. Heffernan:* We do not claim that he had control because the law makes it his duty to go and abate a nuisance.

"*The Court:* You have got your remedy against the person who actually did the wrong.    The question is whether the statute intended to furnish you a remedy against any one else.    I think it is a serious question whether you can maintain this action under this statute. I confess it is not absolutely clear to me, but these decisions seem to show that such provisions as these are

intended for the public.   *   *   *   There is nothing in the statement before the court that would give the owner the right of occupation.

"*Mr. Heffernan:* Except under the law and charter. I am speaking of the common-law doctrine.   He had the duty imposed upon him under the common law and under this statute.   He had no other control that I know of.

"*The Court:* I think it comes right down to this, and I reiterate it.   In all cases it shall be the duty of the owner and occupant to do so and so.   Does that give you a private remedy?

"*Mr. Heffernan:* That is what we claim, your honor. That is why I would like to read the Cooley provisions.

"*The Court:* I have read them, but you can read them again if you want to.

"*Mr. Heffernan:* I am keeping clear of the repairing cases all the time, and confine myself to the question of nuisance.   *   *   *

"*The Court:* You do not claim there was a nuisance when the occupant took possession?

"*Mr. Heffernan:* Oh, no.   It occurred there since, and they did not abate it.   *   *   *

"*The Court:* There is nothing here showing the right of the landlord to go on and abate the nuisance by any statement of facts.

"*Mr. Heffernan:* No; we rely on the law, of course.

"*The Court:* You rely on the landlord's right to go into possession?

"*Mr. Heffernan:* Under the duty to perform this for the benefit of individuals; one of his common-law duties *   *   *   We claim this was a nuisance.   I would like to confine myself to that point.   I insist this was a public nuisance.

"*The Court:* I understand your position about that.

"*Mr. Heffernan:* And nothing else.

"*The Court:* I answer you by saying, so far as the case appears here, if it was a public nuisance, it was the duty of the occupant and not the owner.

"*Mr. Heffernan:* That is what I claim; it was the duty of the owner.

"*The Court:* I do not think so.

"*Mr. Heffernan:* He is given full permission and right to do it because required to do it."

We have set out such portions of the record as convince

us that the court was fully informed concerning the position of plaintiff, of the facts proposed to be relied upon, and of the questions of law which were involved. We think the statement of counsel negatives the fact that the owners were also occupiers of the premises, and admits the fact that they did not occupy and that it was sought to charge them with responsibility for acts of a tenant in incumbering the highway and creating a nuisance therein upon the ground that they owed a duty to plaintiff to abate such condition and nuisance. The ruling was that if the law, statute or other, imposed upon defendants a duty to remove the obstruction, it was not a duty to plaintiff, and a breach of the duty would not afford him a right of action against defendants for damages for his private injury. It is the contention of plaintiff (appellant) that, conceding that the premises were occupied by a tenant who was alone responsible for the obstruction, or nuisance, there is a common-law liability of the owners of the premises having knowledge of the existence of the obstruction to respond in damages to a pedestrian injured on account of the obstruction; that, if not, such liability grows out of a provision of the charter of the city of Marquette which imposes upon the owner and occupant of every lot the duty to keep the sidewalks and streets adjoining such lot in good repair and to "remove and clear away all snow and ice and other obstructions from such sidewalk and keep the same in reasonably safe condition for travel."

We do not understand that the appellant questions the rule that, in the absence of a contract duty on the part of the owner or landlord, the tenant, as between himself and the landlord, is bound to keep the leased premises in repair, or the one that the owner is not liable for damages to third persons for injuries arising from the neglect of the tenant to repair. These rules have been applied where the injury arose from a defect in a sidewalk. *Fisher* v. *Thirkell*, 21 Mich. 1 (4 Am. Rep. 422); *Lynch* v. *Hubbard*, 101 Mich. 43 (59 N. W. 443). But it appears to be

contended that because the obstruction complained about here had existed for so long a time as to become a public nuisance, and was in the street, in which the owners of the property, with the public generally, had the right to be, one at least of the reasons for the rule, namely, that the tenant had the exclusive right of possession and control, does not exist. I am not able to distinguish this case and *Fisher* v. *Thirkell, supra.* In that case the covering to an opening in the sidewalk adjoining leased premises, the covering being in fact a part of the sidewalk, became during the tenancy a public nuisance. It would turn under the weight of one who stepped upon it. It was originally created in a use of the street not unlawful in itself, namely, in constructing under the sidewalk a vault or passageway to the adjoining building. When constructed, and when the term of the tenant began, it was safe. It became broken and unsafe. In the case at bar the obstruction complained about was not a permanent and total obstruction of the highway, but was of the nature of such temporary and incidental uses thereof as proprietors of adjoining premises make of streets and which are permitted as of course if they do not continue for too long a time. Such invasions of the public right of travel are not in and of themselves nuisances, although they may become such if the obstructions are not removed within a reasonable time. There is no reason for requiring the owner of the premises at his peril to inspect the premises and prevent the creation of such a nuisance which will not also require him to discover and remedy such defects in the covering to an opening in the sidewalk as were considered in *Fisher* v. *Thirkell.*

It is said, however, that the duty imposed · upon the owner by the charter of the city of Marquette is a duty to the private citizen, and for a breach of it he may have his action if injured. This contention has also been decided by this court adversely to the appellant in *Taylor* v. *Railroad Co.*, 45 Mich. 74 (7 N. W. 728, 40 Am. Rep. 457), in which it was held that the obligation imposed was a

duty to the public and not to each individual using the walk. The charter of Marquette does not give a right of action for damages sustained by an individual for injuries growing out of an obstruction to the sidewalk.

We conclude that the court below committed no error; and the judgment is therefore affirmed.

BIRD, HOOKER, BROOKE, and BLAIR, JJ., concurred.