## INDIANAPOLIS UNION RAILWAY COMPANY v. SAMPLE.

[No. 8,530. Filed April 2, 1915.]

1. APPEAL.—*Questions Reviewable.—Sufficiency of Complaint.*— Under §344 Burns 1914, Acts 1911 p. 415, no question is presented on appeal by an assignment of error that the complaint does not state facts sufficient to constitute a cause of action. p. 464.

2. RAILROADS.—*Highway Crossings.—Injuries from Defective Condition.—Liability.*—Under a side track agreement between defendant railroad company and its codefendant, a manufacturing company, whereby the defendant furnished the material and constructed a side track at the cost and expense of codefendant upon the right of way controlled by defendant and onto the land of codefendant, which side track, excepting an 80-foot lead connecting it to the main track, was the property of codefendant, and whereby defendant retained the right to disconnect and remove the portion of the track upon its right of way at any time, to change the location and grade, and to use the track when not in use by codefendant, and the codefendant was to pay for trackage

and car service in accordance with established rates, and under a tenancy-at-will lease executed pursuant thereto from defendant to codefendant of that portion of the right of way covered by the side track, by the terms of which codefendant was to keep the premises in good order and condition, etc., defendant was not relieved of its statutory duty to keep in repair a public street crossing thereafter constructed on that portion of its right of way embraced in the lease, and hence was liable for personal injuries to plaintiff from the defective condition of such crossing. pp. 469, 474.

3. LANDLORD AND TENANT.—*Leases.—Liability for Personal Injuries.*—The general rule that the occupant of premises is responsible for injuries inflicted upon another by reason of neglect or failure to keep the premises in repair, subject to the recognized exceptions thereto, applies only where the complete possession, management and control of the premises are legally surrendered to the occupant. p. 471.

4. LANDLORD AND TENANT.—*Corporations.—Power to Lease.—Railroads.*—Generally an individual or a corporation may lease its property so as to confer upon the lessee all the rights and privileges incident to the possession, use, management and control of the same, as well as to impose the corresponding duties and liabilities growing out of an improper, unlawful or negligent use, management or control thereof; but a railroad company, because of its *quasi* public character and its duty to perform its trusts in the interest of the public, can neither lease nor transfer its franchise, nor cast exclusively upon another its liability for the performance of the duties imposed by its franchise, except by the consent of the sovereign granting the same. pp. 472, 474.

5. RAILROADS.—*Highway Crossings.—Duty to Restore.*—The duty imposed upon a railroad company by §5250 Burns 1914, Acts 1895 p. 233, to restore and maintain in reasonably safe condition a highway where its tracks cross the same, is not limited to the crossing over its tracks alone, but includes approaches to such tracks and the entire crossing as it passed over the entire width of its right of way, and such duty can not be cast upon another by the company so as to avoid liability for failure in its performance. p. 473.

6. RAILROADS. — *Highway Crossings. — Injuries from Defective Crossing.—Instructions.*—In an action against a railroad company and the lessee of a portion of its right of way, which was crossed by a highway and on which the lessee maintained a side track under an agreement to keep the premises in good order and condition, to recover for personal injuries caused by a defective condition of the crossing, an instruction that the lessee did not owe the public the duty imposed on the railroad company under the law, of keeping the crossing in a reasonably safe condition for travel as between it and the public, was not erroneous. p. 478.

7. APPEAL.—*Review.*—*Instructions.*—In an action for personal injuries to a three-year-old boy, an instruction defining the proximate cause of an injury as the act or agency which sets in motion the chain of circumstances which produces it, was not erroneous for failure to state that if the child's injury was caused solely by the negligent and wrongful conduct of his sister or mother, or by any other intervening agency, the defendant would not be liable, where, taking the instructions in their entirety, the jury could not have failed to understand that it was not authorized to find against defendant unless its negligence was the proximate cause of the injury. p. 478.

8. APPEAL.—*Excessive Damages.*—*Instructions.*—*Waiver of Error.*—Error, if any, in the giving of instructions on the measure of damages is waived where appellant fails to assign as cause for a new trial that the verdict is excessive, or having assigned such cause, fails to present the same as one of the errors relied on for reversal. p. 479.

From Superior Court of Marion County (84,365); *Pliny W. Bartholomew,* Judge.

Action by Glen Sample, by his next friend Harry E. Sample, against the Indianapolis Union Railway Company and others. From a judgment against it, the defendant named appeals. *Affirmed.*

*Baker & Daniels,* for appellant.

*Edwin E. Thompson, Emsley W. Johnson* and *William F. Elliott,* for appellee.

HOTTEL, C. J.—Glen Sample, hereinafter referred to as appellee, a child under three years of age, by his next friend, brought this action against the Indianapolis Union Railway Company, The Atlas Engine Works, Booth Furniture Company, Keyless Lock Company and Arthur Jordan for damages for personal injuries alleged to have been caused by the negligence of the defendants. There were two paragraphs of complaint, to each of which appellant filed a general denial. For the purposes of the questions presented by the appeal, the pleadings filed by the other defendants need not be indicated.

At the conclusion of plaintiff's evidence, the court sustained the separate motions made by the Booth Furniture Company, Keyless Lock Company and Arthur Jordan, re-

spectively, for a peremptory instruction for verdict in their favor, and overruled like motions made by the Atlas Engine Works and the appellant. At the close of the evidence, appellant and Atlas Engine Works renewed their respective motions for peremptory instructions which were overruled. The jury returned a verdict in favor of appellee and against appellant and the Atlas Engine Works for $1,200. With its general verdict the jury returned answers to interrogatories. The Atlas Engine Works successfully moved for judgment in its favor on such answers. Appellant filed its motion for a new trial which was overruled, and judgment was rendered on the verdict.

Two errors are assigned, viz., "(1) The court below erred in overruling the motion for a new trial of the Indianapolis Union Railway Company. (2) The complaint does not state in either paragraph thereof facts sufficient to constitute a cause of action." The complaint was filed in the court below since the passage of the act of March 4, 1911 (Acts 1911 p. 415, §344 Burns 1914), and hence is controlled by that act. It follows that no question is presented by the second error assigned. *Stiles* v. *Hasler* (1914), 56 Ind. App. 88, 104 N. E. 878.

Under the first error assigned, appellant very earnestly insists that the verdict is not sustained by sufficient evidence, is contrary to law, and that the trial court erred in giving certain instructions and in refusing to give other instructions which it is claimed were proper and applicable to the issues and the evidence. It will be necessary to an intelligent presentation and disposition of the questions presented, that we indicate enough of the averments of the complaint and evidence to show where and how appellee received his injury, and appellant's connection therewith.

The complaint alleges in substance that the appellant is a corporation engaged in the operation of a railway system in Indianapolis; that its right of way runs in an easterly and westerly direction across Sheldon Street, which street

runs north and south in said city; that appellant also owned and operated railway switches which are located on the south side of its main tracks and extend across Sheldon Street; that such switch tracks were used and operated for the purpose of hauling freight to and from the premises of the other defendants above named; that appellant and such other defendants use and operate such switches in connection with their business; that Sheldon Street is a street in said city much used by the public as a thoroughfare; that on or about November 4, 1909, the appellee was being pushed in a go-cart by his sister across the switches in Sheldon Street; that a trench had been dug and the dirt removed between the rails of the switches; that the defendants had negligently and carelessly allowed the crossing to become dangerous and unsafe to persons using said street as a thoroughfare; that at the time appellee was being pushed across said switches, such crossing was dangerous, unsafe and unfit for any vehicle to use; that defendants knew or could have known that such crossing was dangerous and carelessly and negligently allowed it to remain dangerous and unsafe and gave no warning; that by reason of their failure to warn persons using such street said defendants were guilty of negligence and that by reason of their careless and negligent failure to furnish such persons such notice or warning, the go-cart in which appellee was riding fell suddenly and with great force and violence into the trench caused by the removal of said dirt and appellee was with great force and violence thrown and hurled to the ground.

As affecting the question of the ownership and control of the right of way and tracks thereon which crossed Sheldon Street, the following stipulation was entered into by the parties to the action in the trial court, viz.,

"On November 4, 1909, and thereafter Indianapolis Union Railway Company, Atlas Engine Works and Booth Furniture Company were each corporations un-

der the laws of Indiana. On said * * * day * * *,
prior thereto and since * * * (the) Indianapolis
Union Railway Company was the lessee from the Belt
Railroad & Stock Yards Company of a railroad right of
way extending (for the purposes of this case) from a
connection with the C. C. C. &. St. L. Railway Com-
pany's railroad in what was formerly the town of
Brightwood in a generally westerly direction to a con-
nection with the L. E. & W. Railway Company's track
west of Columbia avenue in the city of Indianapolis,
Indiana, and north of 22nd street in said city, and that
such right of way crosses all intervening streets and
alleys between Roosevelt avenue on the east and Co-
lumbia avenue on the west (including Sheldon street).
Said lease has a term of 999 years from 1884, and said
lease had statutory authorization and is a valid lease.
Said Belt Railroad & Stock Yards Company acquired
its title to so much of said right of way as lies between
Columbia avenue on the west and eastward (across
Sheldon street), a distance of a quarter of a mile, from
Stoughton A. Fletcher by deed of conveyance in fee
simple made in 1884. On the 13th day of January,
1902, the Indianapolis Union Railway Company and the
Atlas Engine Works executed an agreement as follows:
(We set out only that part affecting the questions pre-
sented by this appeal.) This agreement, made this 13th
day of January * * * 1902, between the Indian-
apolis Union Railway Company, operating the Belt
Railroad, as First Party, and Atlas Engine Works
* * * as Second Party, Witnesseth: Whereas, the
second party desires the construction of a side track
beginning about twenty-three feet east of the east line of
Martindale avenue at Atlas Station on the Belt Rail-
road Division of the Indianapolis Union Railway Com-
pany * * * said side track to be connected with the
main track of the division aforesaid, on the south side
thereof, extending eastwardly about ten hundred and
twenty-five feet, including seventy-five feet of connec-
tion with Atlas Engine Works yard tracks, of which
about 800 feet shall be on the land of the first party
and balance on land owned and controlled by the second
party. Now, therefore, it is agreed between the parties
that the first party will construct said side track as
above indicated, upon the following terms and condi-
tions: The first party to furnish all material for said
track, unless otherwise specified, using old steel rail and
other materials, which, in the opinion of said first party,

is suitable for said track; also furnish labor for laying the same. For said material, including switch, switch stand, frog and other attachments, and labor, said second party is to pay to said first party the value of the same, as per current market prices. * * * It is further understood that said first party may, when deemed necessary disconnect and remove that portion of the track situated on the property of the first party * * * It is also understood that the first party may, at its option, change the location of the switch and frog connection and the grades of any existing and future tracks and any expense such grade changes may necessitate in changing road bed and location of this side track the second party hereby agrees to assume. Exhibit 'A' herewith attached shows location of said side track. Said side track shall be maintained by the second party, and the cost thereof shall be borne by the second party; this agreement of maintenance includes repairs to switch frog, switch stand and switch ties and any necessary drainage or street crossings. The second party agrees to protect and save harmless the first party from any and all damages or expenses of whatsoever kind, incurred or caused by the neglect of the second party to at all times keep said side track in safe and proper condition. The ownership of said track shall be vested as follows: All in second party except the eighty feet lead in the main track of first party, which shall be vested in said first party, and each party hereby disclaims ownership in any other portion of said side track than as above designated, but the first party shall have the right to use, without cost, the whole or any part of said siding in connection with other business than that of the second party when the same is not occupied by the second party, provided such use of the siding will not interfere with the business of the second party. The second party agrees that without the written consent of the first party, it will not direct or authorize the use of said track by or for the benefit of any other party not one of the parties hereto. The second party further agrees to pay to the first party all amounts that may accrue for trackage and car service, in accordance with the established rates thereof and the rules governing such service, for all cars to be loaded or unloaded on the side track herein described. * * * The second party agrees that the first party, its successors or assigns, shall have the right any time, after six months' notice in writing to the second party, to discontinue the

use of said side track, to remove the connections, switches and frogs upon the property of the first party, and to enter upon the property of the second party, and take up and remove so much of said side track belonging to the first party as may be located thereon * . * * The second party further agrees to execute a tenancy at will lease for land of first party occupied by said side track at a rental of sixty dollars per annum * * *.''

The tenancy-at-will lease referred to in such agreement is in part as follows:

''This agreement made this 13th day of January in the year nineteen hundred and two (1902) between the Indianapolis Union Railway Company * * * as first party and Atlas Engine Works * * * Witnesseth, That the first party hereby demises and leases to the second party a certain strip of land, being part of the right of way of the Belt Railroad in the City of Indianapolis, County of Marion, State of Indiana, described as follows, to wit: (here follows description) To hold the same unto the second party as tenant at will of the first party, and for the rent or sum of sixty (60) dollars per annum to commence on the first day of January, 1902, and to be paid semi-annually in advance during said tenancy. That said first party hereby reserves the right to terminate this agreement and the said tenancy, and to take possession of and re-enter upon said premises at any time hereafter, after having given to the second party, or left upon said premises six months' notice, in writing, of its intention so to do, and requiring said second party to quit and deliver up possession of said premises upon return to it of the proportion of the semi-annual rent for such part of the six months as is unexpired upon the maturity of said six months' notice. That said second party hereby agrees to become and continue to be the tenant at will of the first party, under the conditions hereof, to pay said rent, as above provided, and to keep said premises in good order and condition, and to quit and deliver up possession of said premises to said first party upon the expiration of the time mentioned in any notice to quit given as aforesaid; and that upon the expiration of such time, the said tenancy shall cease and said first party shall have the right forthwith to re-enter upon and occupy said premises without any further or other

notice, proceeding or process whatsoever. That said second party hereby agrees not to use or occupy said premises for any other purpose than for a side track as provided for in accompanying side track agreement and not to assign or transfer this agreement, nor under-let the said premises, without the written consent of the first party being first obtained. * * *."

The parties further stipulated in the trial court as follows:

(1) "It is stipulated that in the month of May, 1902, the Board of Public Works of the City of Indianapolis, adopted a preliminary resolution for the opening of Sheldon street across the original Belt Railroad right of way and subsequently acquired right of way contiguous thereto, and that the confirmatory resolution was adopted in the month of September, 1902, and that the dedication of the street so opened by such resolution included the locality or site identified by the evidence in this case as the place where the plaintiff alleges that he received an injury as alleged in the complaint and that the street has never been vacated and has never been improved. * * *" (2) "It is stipulated that by ordinance effective in October, 1876, the City of Indianapolis guaranteed bonds of the railroad company now known as the Belt Railroad & Stock Yards Company, lessor of the Indianapolis Union Railway Company as aforesaid and by the fourth section of said ordinance it is provided as follows: 'The Belt Railroad & Stock Yards Company shall extend to all persons doing business on or along the line of said railroad full facility to connect switches at rates per car not exceeding that charged by said company for transporting through freight of like class and character over said road;' and continuously forward from the date said ordinance became effective down to the present time the provisions of said section four have been in full force."

It is claimed by appellant in effect that this undisputed evidence shows that it, by its lease from the Belt Railroad and Stock Yards Company in 1884, obtained absolute and complete possession, control and management of the right of way over which the several tracks herein involved were placed; that appellant's main track occupied only a part of such right of way; that on January 13, 1902, the remainder of such right of way was unoccupied; that on

this day appellant leased a part of its unoccupied right of way south of its main line to the Atlas Engine Works; that thereafter the Atlas Engine Works constructed and maintained, on the strip of ground so leased, its own railroad track; that after the Atlas Engine Works had so constructed and maintained its tracks on such strip of ground south of appellant's main track, the city of Indianapolis opened Sheldon Street in said city over and across the appellant's right of way including its own main line and the strip of leased land occupied by the Atlas Engine Works.

Appellant insists that, under this state of facts, it never owed to the public the duty of keeping and maintaining in safe condition the crossing over the switch tracks on such leased land. This claim of appellant lies at the bottom of its discussion of those grounds of its motion for new trial, which charge the verdict as being contrary to law and not sustained by sufficient evidence, and also furnishes a controlling reason for its objections to several of the instructions given and for its contention that several of the refused instructions should have been given, and hence presents an important, if not the controlling, question presented by the appeal. Putting this claim or contention in appellant's own words, it is as follows: "If the question here under discussion arose upon a lease between natural persons or between private corporations, the situation would be this: The Atlas Engine Works being in possession as tenant of land abutting upon both the east side and the west side of Sheldon Street, would also, subject to the public easement, be in possession of the strip of land in Sheldon Street joining its leased land on the east side with its leased land on the west side of Sheldon Street and inasmuch as the street was opened over its railroad track and there was no order to remove or in any way to change this track, normally that track was not a nuisance, and by its written agreement the Atlas Engine Works stipulated to maintain the track in safe and proper condition, and if by reason of something

done to or upon the track it ceased to be in a safe and proper condition and by the act or permission of the Atlas Engine Works became a nuisance, any liability to a third person based upon the fact of such nuisance would be the liability of the Atlas Engine Works and not of its lessor." In support of this contention appellant cites: *West Chicago Masonic Assn.* v. *Cohn* (1901), 192 Ill. 210, 217, 61 N. E. 439, 85 Am. St. 327, 55 L. R. A. 235; *Saltonstall* v. *Banker* (1857), 74 Mass. 195; *Leonard* v. *Storer* (1874), 115 Mass. 86, 15 Am. Rep. 76; *Moore* v. *Oceanic Steam Nav. Co.* (1885), 24 Fed. 237; *Maclam* v. *Hallam* (1911), 165 Mich. 686, 131 N. W. 81. These cases announce that as a general rule "the occupant of premises is responsible for injuries inflicted upon another by reason of the neglect or failure to keep the premises in repair". The exceptions recognized to such general rule are as follows: "The owner of leased premises may be made liable for such injuries (a) if the covenants of the lease require that he shall keep the premises in repair; (b) if the dangerous or defective condition by which the injury was occasioned existed when the premises were leased; (c) if that which occasioned the injury was a nuisance and was upon the premises when the lease was executed." *West Chicago Masonic Assn.* v. *Cohn, supra,* 218.

It may be admitted that the instant case does not fall within either of the exceptions indicated to the general rule, but, we think, the general rule has application only in those cases where the landlord can and does surrender the complete possession, management, and control of his premises to the tenant. Indeed a lease to be complete and effective necessarily involves the surrender of such possession, control and management, and where no legal barrier stands in the way of the lessor making a lease, and the lease itself contains no limitations as to possession, control or management, the general rule above announced, subject to the exceptions indicated, has application. And generally speaking, the law imposes no barriers or limita-

tions on the right of the individual or private corporation to lease his or its property, and a lease made by either, which itself contains no limitation, confers on the lessee all the rights and privileges incident to the possession, use, management and control of the property so leased, and likewise imposes on such lessee all the corresponding duties and liabilities connected with or growing out of an improper, unlawful or negligent use, management or control of such property, subject only to the exceptions above indicated. However, a railroad company, while it is, strictly speaking, a private corporation, is also a *quasi* public corporation, having existence by and through a public franchise, and because of this fact, and because such corporations are held to constitute public trusts carrying with them the duty of the performance of such trusts in the interests of the public, it has been the policy of the law as expressed in numerous decisions of the courts of other jurisdictions to hold that the franchises of such corporation are nontransferable in the absence of express statutory authority permitting such transfer, and hence that liability for the performance of the duties imposed by such a franchise can not be cast exclusively upon another unless with the consent of the sovereign granting the franchise. It has likewise been held that the principles forbidding the absolute transfer of such franchises were equally applicable to leases thereof. Upon this subject, the supreme court of Massachusetts, in the case *Braslin* v. *Somerville, etc., R. Co.* (1887), 145 Mass. 64, 67, 13 N. E. 65, said: ''The general rule is familiar, that neither a steam nor a street railway corporation can make a valid transfer, either by way of absolute deed, mortgage, or lease, of its franchise, or of its railroad and the bulk of its property, or relieve itself of the burdens imposed upon it by law, or by its charter, without the consent of the State.'' See authorities there cited, also, *Brunswick Gas Light Co.* v. *United Gas, etc., Co.* (1893), 85 Me. 532, 27 Atl. 525, 35 Am. St. 385, 390, and note and authorities there

cited.   In this connection it is claimed by appellant that the
city of Indianapolis in October, 1876, passed the ordinance
above referred to by which it provided that the Belt Rail-
road and Stock Yards Company "shall extend to all persons
doing business on or along the line of said railroad full
facility to connect switches with said road"; that by an act
of the General Assembly, approved March 2, 1877 (Acts
1877 p. 116), such ordinance was in all things legalized.
From this it is argued that appellant's lease to the Atlas
Engine Works was authorized by statute.   However, for the
reasons hereinafter indicated, we do not regard this ques-
tion of controlling influence in the determination of the
question under consideration, and hence we need not and
do not decide it.

It is, in effect, conceded by appellant that both the com-
mon law and the statute (§5250 Burns 1914, Acts 1895 p.
233) imposed on it the duty to restore and maintain
5.   in reasonably safe condition for travel, the crossing
of Sheldon Street over its tracks.   Such duty of re-
storing and keeping in safe condition such crossing, under
the statute, as construed by the decisions of the Supreme
Court, is not limited to the crossing over its tracks alone,
but includes approaches to such tracks and the entire cross-
ing as it passed over the entire width of its right of way,
unless by its agreement and lease, it has cast this duty on
the Atlas Engine Works, as to that part of the right of way
so leased to it.   *Louisville, etc., R. Co.* v. *Smith* (1883), 91
Ind. 119; *Southern Ind. R. Co.* v. *McCarrell* (1904), 163
Ind. 469, 71 N. E. 156; *Lake Shore, etc., R. Co.* v. *McIntosh*
(1895), 140 Ind. 261, 38 N. E. 476; *Cleveland, etc., R. Co.*
v. *Federle* (1912), 50 Ind. App. 147, 98 N. E. 123; *Louis-
ville, etc., R. Co.* v. *Pritchard* (1892), 131 Ind. 564, 31 N.
E. 358, 31 Am. St. 451; *Evansville, etc., R. Co.* v. *Allen*
(1905), 34 Ind. App. 636, 73 N. E. 630; *Cincinnati, etc., R.
Co.* v. *Claire* (1893), 6 Ind. App. 390, 33 N. E. 918; *Chicago,
etc., R. Co.* v. *Luddington* (1910), 175 Ind. 35, 91 N. E.

939, 93 N. E. 273, and cases cited. Generally speaking, "The duty of reëstablishing and maintaining at crossings preëxisting safe and convenient situations is statutory, is an implied covenant of the charter contract, and can not be laid aside or upon the shoulders of another. It is a duty the company can not abdicate while exercising its franchise." *Southern Ind. R. Co.* v. *McCarrell, supra,* 473.

Judge Elliott, in his work, 1 Elliott, Railroads (2d ed.) §467, says: "There is a wide diversity of opinion upon the question whether a company that leases its railroad to another company under authority of law is liable for the negligence of the lessee in operating the road under the lease. Many of the courts and some of the text-writers affirm that the lessor is liable although the lease is executed under authority of law, unless the statute which grants the right to lease exempts the lessor from liability. The theory of some of the cases which hold the lessor liable for the negligence of the lessee in operating the road is that a railroad company is never exonerated except where there is an express statutory provision relieving it from liability. The cases to which we refer deny that there can be exoneration by implication, and assert that the authority to lease does not protect the lessor. Other courts hold that the lessor is exonerated from liability for the negligence of the lessee in operating the road, but is liable for injuries resulting from a breach of duty owing to the public, as, for instance, negligence in the construction of tracks, station buildings and the like."

While there is the diversity of opinion on this question indicated by Judge Elliott, there seems to be a unanimity of opinion in the decided cases that a railroad company can not escape the performance of any duty imposed by its charter or by statute by a voluntary lease of its road. On this subject Justice Davis in the case of *Washington R. Co.* v. *Brown* (1873), 17 Wall. 445, 450, 21 L. Ed. 675, laid it down as "the accepted doctrine in this country, that a rail-

road corporation cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the state by a voluntary surrender of its road into the hands of lessees.'' On this question Justice Brewer in the case of *St. Louis, etc., R. Co.* v. *Curl* (1882), 28 Kan. 622, said: ''Defendant contends that where the statute authorizes the lease by one railroad company to another of its track, the lessor company is not responsible for injuries caused by the torts of the lessee company, and in support of that doctrine cites some authorities. To a certain extent this proposition is true; if the injury results from negligence in the handling of trains or in the omission of any statutory duty connected with the management of the road, matters in respect to which the lessor company could in the nature of things have no control, then the lessee company will alone be responsible; but when the injury results from the omission of some duty which the lessor itself owed to the public in the first instance—something connected with the building of the road—then we think the company assuming the franchise cannot divest itself of responsibility by leasing its track to some other company.''

The supreme court of California in the case of *Lee* v. *Southern, etc., R. Co.* (1897), 116 Cal. 97, 105, 47 Pac. 932, 58 Am. St. 140, 38 L. R. A. 71, said: '' 'Herein, as we think, lies the true distinction which marks the dividing line of the lessor's responsibility. In other words, an authorized lease without any exemption clause absolves the lessor from the torts of the lessee resulting from the negligent operation and handling of its trains, and the general management of the leased road over which the lessor could have no control. But for an injury resulting from the negligent omission of some duty owed to the public, such as the proper construction of its roads, station-houses, etc., the chartered company can not, in the absence of statutory exemption discharge itself of legal responsibility.' [*Nugent* v. *Boston, etc., R. Co.* (1888), 80 Me. 62 (12 Atl. 797), 6 Am. St. 151.] In

*Arrowsmith* v. *Nashville, etc., R. R. Co.* [1893], 57 Fed. 165, the same rule is enunciated, and numerous authorities cited in support thereof.  Indeed, a somewhat extended examination of the cases justifies the conclusion that this principle at least is accepted without conflict."

We recognize that the cases cited and quoted from differ from the instant case in that they are cases in which the lessors had leased their entire right of way and tracks, while in the instant case, appellant leased only a part of its right of way for track purposes, but we can see no reason or ground for the application of any different rule or principle to the two cases.  If such a company can not by lease of its entire right of way and road relieve itself of a duty which it owes to the public as to such right of way and road, we can see no reason for holding that it might lease a part of such right of way and thereby relieve itself of the same duty as to the part so leased.  It seems to us, therefore, that under the authorities cited it is clear that, though the lease in question was authorized by law, it could not have the effect of relieving appellant of its statutory duty to keep the crossing in question in a reasonably safe condition for travel; but there is an additional reason why the contract in question should not be so construed.  This contract does not purport to give to the lessee absolute and unlimited possession and control of the leased premises or of the track located thereon.  Under this agreement and lease, the track of the Atlas Engine Works was to be connected with appellant's main track by an 80-foot lead which was to be appellant's.  The appellant was to furnish the material and construct the track and expressly retained the right to disconnect and remove that portion of the track situated on the right of way whenever it deemed it necessary so to do.  It also retained the right to exercise its option to *change the location* of the switch and frog connections and the *grades of any existing or future tracks* and retained its right to use without cost the whole or any part of such siding in

connection with other business than that of the Atlas Engine Works, when such siding was not being used by the Atlas Engine Works. Appellant reserved to itself, its successors and assigns the right after six months' notice to discontinue the use of such tracks, and to remove connections, frogs, switches, etc. The Atlas Engine Works agreed that it would not *without the written consent of appellant* direct or authorize the use of said track by or for the benefit of any other party, and also agreed to pay to the appellant all amounts that might accrue for trackage and car service, in accordance with the established rates thereof and the rules governing such service, for all cars to be loaded or unloaded on the side track herein described.

The agreement provided for a tenancy-at-will lease and this lease contained the provision that the Atlas Engine Works was "not to use or occupy said premises for any other purpose than a side track *as provided for in said side track agreement,* and not to assign or transfer this agreement nor under-let said premises without the written consent of first party being first obtained." By this agreement, appellant never completely surrendered its right to possession and control of the part of its right of way leased to the Atlas Engine Works, nor did it surrender to its lessee that complete possession, control and management of the side track located thereon necessary to bring it within the operation of the general rule before referred to or within those cases which lend most support to appellant's contention.

On this subject, Judge Elliott (1 Elliott, Railroads [2d ed.] §470) says: "Where the lessor company, in an authorized lease, retains control of the road, there is reason for holding it liable for the negligence of the lessee in operating the road. The fact that exclusive control is not transferred to the lessee is an influential factor, and may well be held to constitute the basis of an exception to what we conceive to be the general rule. If the lessor company does retain

control its duty is to exercise that control as the law required.'' To the same effect is the language of the court in the case of *Herron* v. *St. Paul, etc., R. Co.* (1897), 68 Minn. 542, 549, 550: ''Inasmuch as the Great Northern Railway Company [the lessor] retained possession and control of the road, including the right of way, there can be no doubt that the latter duty [that of keeping its right of way free from combustible material] devolved on it; and for any injuries resulting from its neglect to perform that duty it is liable.''

Our disposition of this question disposes of the most serious objections made to the giving and refusal to give instructions, but some instructions remain to which additional or different objections are urged.

Instruction No. 8 given by the court is objected to for the additional reason that it involved the statement of the following proposition, viz., ''That the Atlas Engine Works was under no legal obligation to keep the Sheldon Street crossing in a safe condition for travel.'' Appellant's statement of the proposition involved in the instruction needs qualification. The instruction told the jury that ''the Atlas Engine Works, under the evidence did not owe to the *public* the duty imposed on the * * * Union Railway Company under the law, of keeping said crossing in a reasonably safe condition for travel *as between it and the public.*'' (Our italics.) The instruction, we think, is in accord with the law as expressed in the cases herein cited.

Instruction No. 9 given by the court to which objection is made is as follows: ''Proximate cause of an injury is the act or agency which sets in motion the chain of circumstances which produces it.'' It is, in effect, conceded by appellant that this instruction is correct as far as it goes, but it is insisted, in effect, that it should have gone further and told the jury that if appellee's injury was caused solely by the negligent and wrongful conduct of his sister or his mother, or any other intervening agency

and that if the negligence of the defendants or either of them was not one of the proximate causes of such injury that it would be the duty of the jury in such case to find for the defendants or either of them. In this connection, appellant insists that its instructions Nos. 5 and 6 should have been given. Taking the instructions in their entirety, the jury could not have failed to understand from them that it was not authorized to find against appellant unless its negligence was a proximate cause of appellee's injury.

The giving of instruction No. 11 and the refusal to give appellant's instruction No. 9 is next urged as grounds for reversal. These instructions are on the measure of

8.   damages and while appellant has assigned excessive damages as one of the grounds for its motion for new trial, such ground is not presented or relied on in appellant's brief as one of the errors on which a reversal is asked. It has been expressly held both by the Supreme Court and this court that any error in the giving of an instruction on the measure of damages is waived by the failure of the appellant to assign in its motion for new trial as one of the grounds therefor that the verdict of the jury, is excessive, or by failure to present such ground of the motion to this court as one of the errors relied on for reversal. *Pittsburgh, etc., R. Co.* v. *Macy* (1915), 59 Ind. App. —, 107 N. E. 486, and cases cited; *Peabody-Alwert Coal Co.* v. *Yandell* (1913), 179 Ind. 222, 100 N. E. 758.

Finding no reversible error in the record, the judgment below is affirmed.

NOTE.—Reported in 108 N. E. 400. As to proximate and remote causes of injury from negligence, see 50 Am. Rep. 569; 36 Am. St. 807. Proximate cause and intervening condition, see 1 Ann. Cas. 230. As to the liability of lessor of a railroad for injuries caused by negligence of another using the road under a lease or other contract, see 44 L. R. A. 737. See, also, under (1) 2 Cyc. 691; (2) 33 Cyc. 408, 706; (3) 24 Cyc. 1125; (4) 33 Cyc. 391, 410, 38; (5) 33 Cyc. 273, 271, 280; (6) 33 Cyc. 365, 373; (7) 38 Cyc. 1778; 29 Cyc. 647; (8) 29 Cyc. 750.