BADGLEY *v.* STATE—BROWN *v.* STATE.

[No. 28,417, 28,418. Filed December 16, 1948. Rehearing denied January 18, 1949.]

*T. Ernest Maholm,* of Indianapolis, and *Robert A. Buhler,* of Ft. Wayne, attorneys for appellants.

*Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Assistant Attorney General, and *Merl M. Wall,* Deputy Attorney General, for the State.

EMMERT, J.—These are separate appeals from judgments convicting each appellant of murder in the first degree entered upon the verdict so finding each appellant guilty and fixing the penalty at death.

On February 6, 1947, the grand jury of Lake County returned a joint indictment against both appellants for the first degree murder of John Gerka on the 11th day of January, 1947. Counsel was appointed for each appellant before arraignment, and to the indictment each entered a plea of not guilty. The venue of the cause was changed from Lake County to Jasper County, upon the granting of the verified motion for change of venue from the county filed by the appellant Badgley, and later a change of venue from the regular presiding judge of the Jasper Circuit Court was had upon the verified motion of the appellant Brown. The examination of the jury on the voir dire was begun on the 14th day of October, 1947, and subsequent proceedings in impaneling the jury and the trial continued until the 22nd day of November, when the jury returned a verdict of guilty as to each appellant.

Upon appeal after a conviction, only the evidence most favorable to the state, and all reasonable and logical inferences that may be drawn therefrom, will be considered by this court, and this rule applies in appeals in capital cases. *Keith* v. *State* (1901), 157 Ind. 376, 61 N. E. 716. From an examination of all the evidence the jury was warranted in finding the crime, and the preceding and subsequent events, occurred as follows:

The appellant Frank Badgley was acquainted with the appellant Robert Oscar Brown, and on January 11, 1947, at about 9:00 o'clock, A. M. Badgley in company with other of his relatives was leaving Indianapolis for Chicago by automobile to see another relative who was in the hospital there, all of them riding in an automobile being driven by one of his relatives. At Badgley's suggestion they stopped along East Washington Street in Indianapolis and picked up Brown

who was accompanying him. They arrived in Chicago that same evening where they had supper at the home of relatives. Other relatives came to the same house, and after supper Brown and Badgley requested to be driven to Calumet City to see an acquaintance of Brown's. Some of the relatives then drove Brown and Badgley to Hammond, Indiana, where at about 7:30 P. M. the two left the car, which was then driven back to Chicago.

The appellants Brown and Badgley then stole a 1941 Chevrolet automobile by cutting the ignition cable and connecting a jumper wire to by-pass the ignition lock, and drove east on Cleveland Street in Hammond, where they parked the car in front of some vacant lots and waited for an opportunity to change the license plates. There were two guns on the front seat between the appellants, Badgley having a .38 caliber Smith & Wesson "lemon squeezer" (hammerless) revolver and Brown having a .45 caliber army automatic, both guns being loaded.

There was snow on the ground, snow and ice on the streets, and the atmosphere was clear, with a street light shining about 150 feet east of the scene of the murder. John Gerka, who for some time had been a member of the police force of Hammond, was in uniform, armed, and was showing Donald Cook and Rudolph Mamala, Jr., who had just been appointed to the police department and who had not yet received uniforms or revolvers, the area they would patrol. They were riding in the Hammond Police Department squad car No. 9 which was being driven by Cook. At about 9:00 o'clock P. M. the police officers discovered the stolen Chevrolet as it stood parked with Brown and Badgley occupying the front seat, but drove on by and turned around by using other streets and came

back driving east on Cleveland Street, stopping the squad car facing east 5 or 6 feet north of the stolen car, the front end being about even with the middle of the Chevrolet. The headlights on the squad car were on. Officer Gerka left the police car and went to the door of the stolen Chevrolet. The appellant Badgley got out of the Chevrolet and said to Officer Gerka, "I guess you want to see my driver's license," to which Gerka answered, "Yes." Officer Mamala got out of the squad car and noticed Badgley hunch his shoulders, whereupon Gerka grappled with Badgley and said, "Rudy, he's got a gun." Officer Mamala seized Badgley and slammed him up against the car, Gerka having taken Badgley's gun from him.. The appellant Brown had gotten out of the Chevrolet from the other side and went around to the rear where he began shooting with the .45 automatic at Gerka. Gerka ducked down in front of the squad car and fired at Brown and said, "Cook, call for help." The rapid exchange of fire continued until both guns were empty, but Gerka did not use his service revolver. Gerka then said, "I'm hit," and fell to the street. Officer Mamala saw Brown aiming at Gerka, when he released Badgley and dived for Brown, both of them falling on the ice struggling for the gun. The gun flew up in the air and landed about 10 feet away, each attempting to get the gun first. Mamala seized Brown by the coat, which came off, and again seized Brown by a green sweater he was wearing, which also came off. Both continued to struggle for the gun, which was then empty with the slide locked open. Brown managed to hit Officer Mamala over the head with the gun, but Mamala choked and shook Brown until the gun again flew away about 15 feet. Mamala recovered the gun, but Brown by that time was running down

an alley to escape. Officer Gerka had been shot through the chest and spinal cord and was dying along the gutter on the north side of the street, and Officer Cook, who had remained behind the wheel of squad car No. 9 and had twice radioed for help, was fatally shot, from which wounds he died two days later.

Other members of the Hammond Police Department soon arrived and Officers Cook and Gerka were removed to the hospital. The two guns, the coat and sweater worn by Brown, and other clothing and articles of the appellants, were recovered by the various members of the police force. The topcoat worn by Badgley, which he had discarded in his flight about 300 yards from the scene, was recovered the following day. Officer Mamala's hands were covered with dirt and blood, and Brown, during the fight, received a cut on the left side of the head from which blood ran on his shirt.

Brown and Badgley escaped bareheaded. The appellant Badgley stole a bicycle in the neighborhood which he rode to the vicinity of a movie theatre which he entered and remained a short time. When he left the movie he hired a taxicab which took him to one of his relatives in Whiting where he stayed the remainder of the night, and rode back to Indianapolis the following Monday with other of his relatives.

The appellant Brown went to the home of some of his friends where he remained all night, and next day borrowed a new shirt and topcoat and went to Chicago. Badgley was arrested at the home of some of the relatives in Indianapolis about midnight January 27th. The appellant Brown went to some relatives near Buffalo, and began working at a filling station and garage there on the 26th of January, and while so working was arrested on Janu-

ary 29th. The entire record in each appeal, which extends through more than 1,100 pages each, has been carefully examined. The trial court did not err in refusing to peremptorily instruct the jury to return a verdict of not guilty as to each defendant, and the verdict is sustained by sufficient evidence and is not contrary to law.

Before pleading to the indictment the appellant Brown filed a separate motion to quash the indictment. The indictment did state a public offense with sufficient certainty. § 9-1129, Burns' 1942 Replacement (Acts 1905, ch. 169, § 194, p. 584); § 9-1127, Burns' 1942 Replacement (Acts 1905, ch. 169, § 192, p. 584); § 9-1126, Burns' 1942 Replacement (Acts 1905, ch. 169, § 191, p. 584); *Kennedy* v. *State* (1935), 209 Ind. 287, 196 N. E. 316. The motion to quash was properly overruled.

After the appellants had each pleaded not guilty to the indictment, and after the examination of the jury on the voir dire had proceeded for several days, each of the appellants filed a separate motion for leave of court to withdraw their pleas of not guilty for the purposes of filing a plea in abatement "for the reason that the Grand Jury of Lake County, Indiana, at the time of the return of the indictment . . . was an illegal Grand Jury, not drawn according to law," and the appellants separately offered to file a plea in abatement. The motion was overruled and the offer was rejected and overruled. At various times thereafter during the trial the appellants moved the court to reconsider its rulings, which were each refused and overruled. A plea in abatement must precede a plea in bar. *Biddle* v. *State* (1927), 199 Ind. 284, 157 N. E. 280; *Cooper* v. *State* (1889), 120 Ind. 377, 22 N. E. 320; *Pointer* v. *State*

(1883), 89 Ind. 255. By the subsequent motions for the court to reconsider its rulings on the matters of abatement made after the jury was sworn to try the cause, it appears that the appellants' contentions were that there was an irregularity in the impaneling of the grand jury in that the names as drawn from the jury box were not spread of record on the order book of the Lake Criminal Court. An irregularity of this nature, if it did exist, was a matter of public record, which could easily have been ascertained as soon as counsel were appointed. Even assuming there were irregularities as charged, there were no allegations of fraud or corruption and no showing that the appellants' substantial rights had been prejudiced in any manner. *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, 37 N. E. 2d 537. The trial court did not err by overruling the motions to open the issues and permit the filing of pleas in abatement. Ewbank's *Indiana Criminal Law* § 365, p. 235 (2d ed.).

The appellants assert the trial court committed prejudicial error in overruling each of their motions for a separate trial. The motion of appellant Badgley for a separate trial was on the ground that he would be "grossly jeopardized" by joint trial with appellant Brown "on account of said Robert O. Brown's previous criminal record." Appellant Brown did not take the witness stand and there was no attempt by the state to introduce independent evidence of prior convictions, although during the trial there was some evidence produced which incidentally referred to the fact that Brown had been incarcerated in the Indiana State Prison. There was no valid objection to any of this evidence. The material parts of the separate motion of appellant Brown averred that there would be evidence which would be admis-

sible against his co-defendant, in the nature of a confession, or a statement by Badgley which would be admissible as to him but which would prejudice the jury against Brown. Since the enactment of Chapter 92 of the 1935 Acts there has been no absolute right to a separate trial in felony cases.[1] By this act, the previous statute was amended to read as follows:

"When two (2) or more defendants are jointly charged with any offense, whether a felony or a misdemeanor, they shall be tried jointly, unless the court, in its discretion, on the motion of the prosecuting attorney, or of any defendant, or on its own motion, orders separate trials. . . ." (Acts 1905, ch. 169, § 259, p. 584; 1935, ch. 92, § 1, p. 286.)

The granting of a motion for separate trials where defendants are jointly indicted rests within the sound judicial discretion of the trial court, subject only to a reversal if the ruling shows an abuse of this discretion. *Neal* v. *State* (1938), 214 Ind. 328, 333, 14 N. E. 2d 590. There was nothing in either motion which would indicate the trial court abused this discretion, nor does an examination of the entire record of all the evidence given on the trial show that there was any abuse of discretion. See *Marks* v. *State* (1942), 220 Ind. 9, 21, 40 N. E. 2d 108. Repeatedly the trial court admonished the jury that any admissions in evidence as to the appellant Badgley should not be considered evidence against appellant Brown. By the court's instruction No. 21 the jury was told in substance that any statements or admissions made by the appellant Badgley out of the presence of the appellant Brown "can not be considered by you as any evidence

---

[1] Sec. 259 of ch. 169 of the 1905 Acts provided: "When the indictment or affidavit is for a felony against two (2) or more defendants jointly, any defendant requiring it, before the jury is sworn, must be tried separately."

against the defendant, Brown, and that should be entirely disregarded by you in determining the guilt or innocence of said defendant." The jury was correctly instructed, and we must presume that the jury was competent to and did limit the statements and admissions of the appellant Badgley as affecting only his guilt or innocence of the charge under which he was tried. *Landreth* v. *State* (1930), 201 Ind. 691, 171 N. E. 192, 72 A. L. R. 891.

The appellants, before the beginning of the voir dire examination of the prospective jurors, filed a written motion to challenge the entire array of the regular panel drawn for the term. The record discloses that the court heard evidence upon the motion, but this evidence is not brought in the record by any bill of exceptions, and in the absence of such evidence in the record we must presume that the ruling of the trial court was correct in overruling the challenge. *Hamilton* v. *State* (1939), 207 Ind. 97, 190 N. E. 870.

During the progress of the trial the appellant Badgley became unruly, refused to heed the advice of his own counsel, committed acts which were a direct contempt of court, and conducted himself in such an unreasonable manner that the trial court recessed the trial and appointed two physicians to examine his mental condition pursuant to § 9-1706, Burns' 1942 Replacement. After an examination the two physicians testified in open court out of the presence of the jury that the appellant was sane and that his conduct was only an evidence of uncontrolled temper. After hearing the evidence the court correctly found that the appellant Badgley had comprehension sufficient to understand the nature of the charge against him and the proceedings and to make his defense thereto, and

resumed the trial. Thereafter appellant Badgley was permitted to file a special plea of insanity, to which the state filed a reply in general denial. Three days later the state was permitted to withdraw its reply of general denial to the special plea of insanity, and upon motion of the state, the special plea of insanity was stricken out.

Under § 9-1701, Burns' 1942 Replacement (Acts 1913, ch. 298, § 1, p. 774) a special plea of insanity must be made in writing for the defense to be in issue. *Swain* v. *State* (1939), 215 Ind. 259, 18 N. E. 2d 921; *Foster* v. *State* (1944), 222 Ind. 133, 52 N. E. 2d 358; *Walker* v. *State* (1894), 136 Ind. 663, 36 N. E. 356; *Sage* v. *State* (1883), 91 Ind. 141. Although this court in *Swain* v. *State, supra,* said that a special plea of insanity "need not be made at the arraignment, as in an oral plea of guilty or not guilty," (p. 264), we know of no case in this state which holds that under the statutory regulations requiring such a special plea, such plea can be interposed at any time during the progress of the trial. There was no error in permitting the State to withdraw its reply of general denial and in striking out the special plea of insanity.

The trial court refused to give appellants' requested instruction No. 57. The instructions given by the court are not set forth at length in either appellant's briefs. Rule 2-17. Nor is there a discussion of this alleged error in the argument. But from the examination of the requested instruction as contained in the record it appears that it was merely an abstract statement of the law, and from an examination of all the evidence given or offered in the cause it is not apparent that it has any application to such evidence. This court on appeal is not required to

conjure up possible situations to which an abstract instruction on the law may apply. There was no available error in the court's refusal to give this instruction.

The appellants assert error in the ruling of the court denying their motion to withdraw the submission of the cause and declare a mistrial for misconduct of the jury in attending a certain moving picture during the progress of the trial. The jury had been ordered kept together in the custody of the bailiffs of the court after it was duly impaneled. The appellants' motion was unverified, but assuming the facts therein stated were true, the motion picture witnessed by the jury portrayed a plot dealing with the solution of a homicide wherein the accused was arrested, mistreated by the police officers and under coercion induced to sign a false confession, mistakenly identified as the guilty party, and at the conclusion of the trial found not guilty and discharged by the court. It was irregular to say the least for the bailiffs in charge of the jury to take the jury to see a moving picture without the permission of the trial judge and the consent of the parties. But we are unable to see in any manner how the appellants could have been harmed by seeing the picture, since from their own motion it appears that the accused in the picture was not guilty and was so found by the court, and the authorities of the state were portrayed in a manner such as might well be calculated to prejudice the rights of the State of Indiana in obtaining a fair trial. There was no error in the court's overruling the appellants' motion for a mistrial on this ground.

The record in this case discloses that each defendant was represented by competent counsel at every stage of the proceeding and that each was given a fair trial

under due process of law. The verdict as to each appellant is amply supported by the evidence and the jury under the instructions of the court, the law and the facts was justified in finding each appellant guilty beyond a reasonable doubt. No reversible error has been presented to this court.

The judgments are affirmed.

NOTE.—Reported in 82 N. E. 2d 841.