KALLAS *v.* STATE OF INDIANA

[No. 28,469. Filed February 4, 1949. Rehearing denied March 7, 1949.]

106

*Robert G. Estill,* of East Chicago; and *George Cohan,* of Gary (of counsel), for appellant.

*Cleon H. Foust and J. Emmett McManamon,* Attorneys General, *Frank E. Coughlin,* First Deputy Attorney General, *Merl M. Wall,* Deputy Attorney General;

and *John E. Roszkowski,* of Hammond, and *Benjamin Schwartz,* of East Chicago (of counsel), for appellee.

EMMERT, J.—This is an appeal from a judgment of conviction upon the verdict of the jury finding appellant guilty of murder in the first degree and fixing his penalty at death.

On the 12th day of September, 1947, the grand jury of Lake County returned an indictment against Thomas Kallas, charging him with the first degree murder of George Stocks on the 3rd day of September, 1947, by cutting and stabbing him to death. The appellant was represented by competent counsel before the arraignment, during all the proceedings in the trial court and on this appeal. On February 10, 1948, which was within the statutory time for filing a motion for new trial, the appellant filed a motion for new trial, and at the same time requested the court for additional time to file an amended motion for new trial "after the completion of the transcript of the evidence in this case by the court reporter." Thereupon the trial court granted the defendant an additional sixty days in which to file an amended motion for new trial. Thereafter on April 19, 1948, appellant filed an additional motion for new trial specifically assigning certain errors occurring at the time of the *voir dire* examination of the jury and on the trial of the case. On May 26, 1948, after argument by counsel, the trial court overruled appellant's amended motion for a new trial. The original transcript did not show the court ever made any ruling upon the original motion for a new trial filed February 10, 1948, and the state filed a motion to dismiss this appeal for the reason the same was not perfected "within 90 days from the date of the judgment or the ruling

on the motion for a new trial" as required by Rule 2-2 of this court.[1] However, the majority of the court was of the opinion that the provision that "No appeal will be dismissed as of right because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a situation the appellate tribunal may, in its discretion, suspend consideration until disposition is made of such issues . . ." of Rule 2-3 should apply. Therefore, this court retained jurisdiction of the appeal, and ordered the trial court to rule upon the original motion for new trial filed February 10, 1948, with leave to the appellant to file a supplemental assignment of errors. The trial court overruled this motion for a new trial, which record has been certified to this court, and the appellant has now filed a supplemental assignment of errors thus placing this appeal ready for final disposition. There is no merit in the motion to dismiss the appeal and it is now denied. The record does not disclose upon what representation, apparently oral, the trial court granted additional time to file an amended motion for new trial. But from the order book entry we are led to believe that it was done as a matter of convenience for counsel so that the full transcript of the evidence would be completed before the motion was prepared. This is not a sufficient cause for entertaining a motion for new trial which is not filed within thirty (30) days from the date of the verdict, as required by § 9-1903, Burns' 1942 Replacement. There is no showing of any fraud perpetrated upon the court or upon the appellant which was later discovered, or that there was newly discovered evidence after the time had lapsed, or that the

---

[1] The time in criminal appeals is governed by the rule and not by the statute. *Smith* v. *State* (1939), 215 Ind. 276, 19 N. E. 2d 549.

appellant had been denied his constitutional rights before or during the trial, which might necessitate the relaxation of the time limitation for filing a motion for new trial. However, since this is an appeal from a death sentence, we shall consider the errors alleged in appellant's briefs to see that substantial justice has not been denied him, although this court may not be bound to do so in view of the failure in certain instances to comply with well recognized rules for the determination of appeals. See *Thompson* v. *State* (1946), 224 Ind. 290, 293, 66 N. E. 2d 597; *Hicks* v. *State* (1938), 213 Ind. 277, 302, 11 N. E. 2d 171, 12 N. E. 2d 501; *Brown* v. *State* (1934), 206 Ind. 223, 189 N. E. 133; *Mack* v. *State* (1932), 203 Ind. 355, 361, 362, 180 N. E. 279; *McCutcheon* v. *State* (1927), 199 Ind. 247, 251, 155 N. E. 544; *Marhall* v. *State* (1949), *ante,* p. 1, 83 N. E. 2d 763.

Upon appeal after a conviction, only the evidence most favorable to the state, and all reasonable and logical inferences that may be drawn therefrom, will be considered by this court, and this rule applies in appeals in capital cases. *Keith* v. *State* (1901), 157 Ind. 376, 61 N. E. 716; *Badgley* v. *State* (1949), 226 Ind. 665, 82 N. E. 2d 841.

From an examination of the evidence it appears that the facts involved in this crime were as follows:

The appellant, Thomas Kallas, age 57 years, was a homosexual pervert. The evening of September 3, 1947, the decedent was in a tavern of a hotel in East Chicago, Indiana. Thomas Kallas, who had a room in this hotel, also came into the tavern, and in a short time took a seat by the decedent and engaged him in conversation. The appellant bought the decedent another beer and another drink of whiskey for himself. After remaining there 15 or 20 minutes, appellant invited the decedent to go to his room for some more drinks.

Ten or fifteen minutes later in the evening decedent was found in front of the door of the appellant's room in a pool of blood, dead as the result of seven wounds inflicted by appellant with a four and one-half inch blade hunting knife. The room lights were out at the time the body was discovered. The appellant had purchased the knife some months before, and kept it in a dresser drawer, but when the police entered the sheath was on top of the dresser and the knife was under the pillow on the bed. The decedent's clothes were all on, with the exception of one shoe which was under the bed. When the police officers arrived the appellant was in a half dazed condition lying on the bed wearing only pajama trousers. He had been drinking although he was not intoxicated, and an empty whiskey bottle was resting on the dresser together with some paraphernalia prepared for use by the appellant for his unnatural perversion.

The same night immediately following the killing, to various witnesses the appellant said, "I killed him and I would kill eight more like him;" "I killed the s__ o__ a b__ and I would do it again." "I killed a dog;" "I killed the b____d, I killed him." In explanation for his actions appellant said, "He hit me and wants to rob me," but the next day he said he didn't know the boy he had killed and had never seen him before; that some strange person rushed into his door and demanded his money. But when confronted with the bartender of the hotel tavern he admitted that he had met the decedent in the bar room and "went upstairs with him and drank with him." There were no bruises or marks of any nature upon appellant to corroborate his story that he was hit by the decedent, and the decedent had $3 on his person when found. The appellant as a witness testified that the decedent had attempted to rob him.

There is nothing else in the evidence that even faintly suggests that the decedent was a thief or a robber or would have been likely to have assaulted the appellant with intent to rob. The evidence introduced without objection showed decedent was 23 years old, 5 feet and 10 inches tall and weighed 130 pounds and was unarmed. During the war he was a bombardier with the 8th Air Force and had received the Bronze Medal for bravery. After the war he worked at the Hines Hospital in Illinois, but the sight of many cripples at that institution so worried him that he sought other employment and came to work with his brother for U. S. Gypsum Company in Lake County. He had never been in any trouble in his entire life.

The day before the killing appellant's roommate found him talking to a young man about 16 or 17 years of age calling him many names. He told appellant to let the boy alone, whereupon appellant pulled a small pocket knife and told him if he didn't shut up he would do away with him. The roommate also testified that appellant had shown him the hunting knife several times "before he wanted me to do it, and asked me what I thought about" the knife. There was no evidence that appellant ever went hunting or had used the knife for any proper purpose.

The appellant admitted he killed the decedent, and from the physical facts and evidence as well as appellant's admissions the jury had the right to find ██ that the killing was accomplished purposely and with malice. There need not have been any appreciable space of time between the formation of an intent to kill and the execution of that intention, for as often stated by this court, they may be as instantaneous as successive thoughts. *Binns* v. *State* (1879),

66 Ind. 428; *Koerner* v. *State* (1884), 98 Ind. 7; *Everett* v. *State of Indiana* (1935), 208 Ind. 145, 195 N. E. 77; *Dundovich* v. *State* (1921), 190 Ind. 600, 131 N. E. 377. There was sufficient evidence to sustain the charge that the killing was done with premeditated malice.

The appellant by his admissions, and by his testimony at the time of the trial placed in issue his intention in doing the act, and made the claim that it was done in self defense. The state was not bound to prove motive. *Brattain* v. *State* (1945), 223 Ind. 489, 61 N. E. 2d 462. But circumstantial evidence by the state on the question of motive was proper. *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157.

On the trial the state as a part of its evidence in chief introduced evidence, over the objection of the appellant, of various prior specific acts and offenses involving indecent assaults and homosexual acts of perversion perpetrated by the appellant upon boys and young men other than the decedent. This series of offenses extended from 1941 down to and including several offenses with his roommate, the last of which occurred a few days before the murder. Appellant admitted to the police officers that his offenses of sodomy were "So many I don't remember." It is not necessary to recite all the revolting details, but it is sufficient to note that this chain of events evidenced appellant's design, scheme, plan, system and intention to satisfy his grossly abnormal sexual impulses. Repeatedly he invited young men and boys to his room as a part of his plan, scheme and design, and his general motive and intent were the same in each instance.

The general principles concerning the admission of evidence, which is relevant in a criminal case, even

114

though it discloses the accused has been guilty of other offenses, has been well stated by Hughes, J., in *Anderson* v. *State* (1933), 205 Ind. 607, 618, 186 N. E. 316, as follows:

> "All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the defendant. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent, and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact. *Underhill on Criminal Evidence* (2 Ed.) p. 163, and many cases cited.

> "The fact that the evidence introduced to prove the motive of the crime for which the accused is on trial points him out as guilty of an independent and totally dissimilar offense is not enough to bring about its rejection, if it is otherwise competent. *Underhill on Criminal Evidence*, (2 Ed.) p. 164, 165."

It would be futile to attempt any analysis of the various conflicting authorities upon the question of admissibility of prior specific acts and offenses, or attempt to rationalize the cases. See II *Wigmore on Evidence* (3rd Ed.), Ch. XIII. Much depends upon the facts in each particular case, and there has been great divergence of opinion on the question of relevancy.

Where there is a common purpose and design by way of a conspiracy to assault a class of persons, other

offenses are relevant and may be admitted in evidence. *Peats* v. *State* (1938), 213 Ind. 560, 12 N. E. 2d 270. In this case Fansler, J., wrote, at pages 572, 573:

". . . The malice and intention to injure was not directed against a particular individual, but against a class, and evidence that appellant aided or participated in, or counselled or encouraged, similar attacks against members of the class, is clearly competent to show malice toward Penny, who was one of the class, a design and purpose that the thing should be done which resulted in his death. It is well settled that collateral crimes may be proven where they tend to prove motive, malice, guilty knowledge, or intention. *Sanderson* v. *State* (1907), 169 Ind. 301, 82 N. E. 525; *Card* v. *State* (1886), 109 Ind. 415, 9 N. E. 591."

The reasons for admissibility apply with equal force where there was no conspiracy but only the motives, malice, plan and intention by only one accused to commit acts of sodomy upon young male persons as a class.

In *Lawson* v. *State* (1908), 171 Ind. 431, 84 N. E. 974, the defendant was charged and convicted of the murder of her husband, which she claimed was done in self-defense. The state was permitted to introduce evidence of her improper relations with another man. The court said:

". . . The State clearly was entitled to place before the jury as evidence any circumstances which might suggest a possible motive on the part of the accused for perpetrating the unnatural crime of killing her husband. The jury possibly might believe from the evidence that Russell had so alienated her affections that she desired the death of her husband, and therefore was induced to kill him for that reason. Whether the evidence was sufficient to justify this belief was a matter for the determination of the jury. That it was,

however, competent for the purpose for which it was introduced, is well settled. *Hinshaw* v. *State* (1897), 147 Ind. 334, 367, 47 N. E. 157; *People* v. *Nineman* (1887), 8 N. Y. St. Rep. 300; Gillett, *Indirect and Collat. Ev.*, § 59, and authorities cited in note 2." (pp. 437, 438.)

The general rule concerning other specific offenses was recently stated by this court in *Shneider* v. *State* (1942), 220 Ind. 28, 40 N. E. 2d 322, as follows:

". . . When evidence has been introduced from which the jury might conclude that the act, which is the basis of the crime, has been committed by the defendant, evidence of other similar transactions is competent to prove motive or criminal intent, and it is not necessarily reversible error to admit such evidence of other transactions before the preliminary proof has been made, since the order of proof is within the discretion of the trial judge, and the admission of evidence out of order is harmless if the preliminary proof is afterward made. The other acts, generally referred to as other offenses, need not be a part of the transaction charged. It is sufficient if they are of such a character that they tend to prove criminal intent in the principal transaction. . . ." (pp. 32, 33.)

In *Borolos* v. *State* (1924), 194 Ind. 469, 143 N. E. 360, evidence of other acts of sodomy with other boys was held properly admitted. This court, at page 473, said:

". . . But where the evidence discloses a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or offers an explanation of facts that, unexplained, would tend to discredit the evidence introduced by the state, evidence of other crimes than the one charged in the indictment is sometimes admissible; and this rule is particularly applicable to trials for sexual offenses. *State* v. *Markins* (1884), 95 Ind. 464; *State* v. *Place* (1893), 5 Wash. 773, 32 Pac. 736; *Barnett* v. *State* (1922), 104 Ohio St. 298,

135 N. E. 647; *State* v. *Desmond* (1899), 109 Iowa 72, 80 N. W. 214; *State* v. *Hummer* (1905), 72 N. J. Law 328, 62 Atl. 388; *Harmon* v. *Territory* (1905), 15 Okla. 147, 159, 79 Pac. 765; *Proper* v. *State* (1893), 85 Wis. 615, 628, 55 N. W. 1035; *Cook* v. *State* (1922), 155 Ark. 106, 244 S. W. 735."

The better reasoned decisions of other jurisdictions are in accord with the precedents of this court. The facts in *Commonwealth* v. *Winter* (1927), 289 Pa. 284, 137 Atl. 261, disclosed a sadistic murder of children by a sexual pervert. The court held it was proper to admit evidence of an unsuccessful solicitation by the accused to commit sodomy upon two older brothers of the deceased children on the same day. The court recognized that the mental state of the accused was a proper matter for proof by the following language:

". . . The courts are bound to recognize, particularly in crimes relating to matters of sex (*I Wigmore on Evidence, sections* 394, 398), that the mental state of the accused is an important factor; anything which throws light upon his state of mind just previous to the commission of the offense with which he is charged strongly illuminates his place in the picture of the crime and gives better opportunity to estimate the likelihood of his connection with it. We think it cannot logically be contended that it would not be relevant where the charge was rape to show that just prior to the commission of that crime the prisoner had attempted to ravish another woman. In the instant case, it is the theory of the prosecution that the defendant killed these children as a result of his having debauched or attempted to debauch them, and,—as showing the state of mind, just prior to his coming in contact with them, as being such as would lead him to the commission of crime upon them,—it was proper and relevant to show his crime-seeking attitude with other children. This takes the evidence out of the rule as to unrelated crimes and makes it competent and proper for reception. In *Com.* v. *Ferrigan,* 44 Pa. 386, it was said, 'On the

trial of a criminal prosecution, where the facts and circumstances offered in evidence amount to proof of a crime other than that charged, and there is ground to believe *that the crime charged grew out of it,* or was caused by it, such facts and circumstances may be admitted to show the *quo animo* of the accused.'" (pp. 290, 291.)

The relevancy of the evidence of prior offenses may depend upon the particular facts, where they extend for several years prior to the crime for which the accused is being tried. *State* v. *Rediker* (1943), 214 Minn. 470, 8 N. W. 2d 527. In this case the defendant was convicted of killing his wife, and evidence of prior assaults upon her for a period of four years was held properly admitted. The court, at page 481, said:

"There was ample evidence of frequent quarrels between defendant and his wife and of his abuse of her, from which the jury could draw inferences that the bruises and injuries testified to were inflicted by defendant. He gave his version of what caused the bruises and marks, but from all the testimony the jury could, and no doubt did, believe that defendant, over a period of several years, particularly on occasions when he had been drinking, pursued a course of abusive conduct toward his wife which culminated in the tragedy here involved. Evidence that Mrs. Rediker bore marks of assault would not alone be admissible. Where, however, there is, as here, evidence to connect the fact of her frequent bruises with noises and commotion, commingled with defendant's threats and curses emanating from their apartment, the evidence is admissible to show a course of conduct and a mental attitude of defendant toward his wife, and to show malice. *State* v. *O'Donnell,* 176 Iowa 337, 157 N. W. 870; *Wever* v. *State,* 121 Neb. 816, 238 N. W. 736. We conclude that the challenged testimony was properly admitted."

A number of separate offenses committed against various individuals may be relevant to show motive,

plan, or scheme. In *Williams* v. *State* (1922), ▮ 152 Ga. 498, 110 S. E. 286, in a trial for murder the state introduced evidence of nine other murders as a part of the scheme. The court, at page 522, reasoned:

". . . Therefore, that the motive might be, if put into execution, entirely effective, it involved the scheme of killing every person answering to the description of a possible witness against him for peonage; and if this method of destroying testimony was to be effectual, it was to be executed as promptly as opportunity and other circumstances for secrecy might afford. Upon this theory of the State's case the testimony complained of in these grounds of the motion was properly admitted."

Prior sexual offenses are not to be excluded merely because they may prove another crime if "the former transaction has a logical connection with the fact in issue, . . . although it may be a crime." *Frank* v. *State* (1914), 141 Ga. 243, 261, 80 S. E. 1016. In this case the State was permitted to introduce evidence that the accused had indulged in lascivious practices with other women in the office in his factory on numerous occasions. The court wrote a well considered review of the authorities and said:

". . . Under this doctrine, collateral facts are not to be rejected merely because they may show the commission of some crime other than that for which the accused is on trial, but they will be admitted, notwithstanding they may show the commission of other crimes, if they tend to illustrate the defendant's guilt or innocence of the crime for which he is being tried. In 3 Bishop's *Criminal Procedure* (2d ed.), § 629, subsec. 4, it is said: 'Any motive rendering the killing probable or explaining it against inherent improbabilities, or otherwise helpful to the jury as a circumstance, may be proved against the defendant.' (pp. 256, 257.)
". . .

". . . The evidence tended to show a practice, plan, system, or scheme on the part of the accused to have lascivious or adulterous association with certain of his employees and other women at his office or place of business, in which place the homicide occurred. Some of these acts were shown specifically to have occurred not long before the homicide, and others must have taken place at no great distance of time, because Conley was only employed at the factory a little more than two years. It tended to show a motive on the part of the accused, inducing him to seek to have criminal intimacy with the girl who was killed, and, upon her resistance, to commit murder to conceal the crime. There was not only evidence of the practice of the accused with other women, but during the trial there was also introduced evidence tending to show that in pursuance of his general practice he made advances toward the deceased. We think that the evidence was admissible, both on the subject of motive and of plan, scheme, or system, and as tending to show identity. . . ." (pp. 266, 267.)

The Supreme Court of California likewise held that a prior crime may be admitted in evidence if it shows the general plan or scheme. In *People* v. *Lisenba* (1939), 14 Cal. 2d 403, 94 P. 2d 569, the defendant was indicted for the murder of his wife in 1935 by causing her to be bitten by a rattle snake and then drowning her in the bathtub in order that he could collect insurance upon her life. The court approved the admission of evidence that the accused had murdered a former wife in Colorado in 1932 by drowning her in the bathtub and collected insurance upon her life. The court held the prior offense was relevant to prove "a general plan or scheme on the defendant's part to insure, marry and murder his victims in order that he might thereby profit financially." (p. 428.) The court in its opinion approved the reasoning in *People* v. *Morani* (1925), 196 Cal. 154.

236 Pac. 135, which held that evidence that six years before the accused had poisoned a former wife by strychnine in order to collect insurance on her life was admissible to show the motive, in the murder of the second wife. The Lisenba case was later affirmed by the United States Supreme Court in *Lisenba* v. *People* (1941), 314 U. S. 219, 227, 228, 62 S. Ct. 286, 86 L. Ed. 166, 175, wherein the court rejected the contention that admissions of evidence of prior offenses was a denial of due process under the Fourteenth Amendment, as follows:

> "Testimony was admitted concerning the death of James' [alias of petitioner Lisenba] former wife, on the widely recognized principle that similar but disconnected acts may be shown to establish intent, design, and system. The Fourteenth Amendment leaves California free to adopt a rule of relevance which the court below holds was applied here in accordance with the State's law."

The jury had the right to find that the appellant in accordance with his scheme, plan, intention and design, invited the decedent to his room for the purpose of perpetrating upon him his unnatural acts, and when decedent resisted his unnatural advances he was killed for so doing; or that the appellant was also a sadist as well as a homosexual pervert, and that the killing was a sadistic murder.[2] The appellant did not become a homosexual pervert over night. Under the uncontradicted evidence shown by the record it does not

---

[2] ". . . The sadist may be sexually inferior; he may have masochistic tendencies; he may be homosexual, heterosexual, or bisexual; his victims are usually fortuitous and may be of widely different ages; the degree of violence used may depend upon the delay which occurs before full sexual satisfaction is reached, that is to say the greater the delay the greater the violence; the greater the violence used the more likely is the act to be associated with gross mental abnormality. . . ." 55 Yale Law Journal 552, *Sexual Offenders—a British View*, by W. Norwood East.

require the opinion of any psychiatrist to show to this court that appellant's prior acts of unnatural lust were a manifestation of an abnormal mental condition which was relevant to establish the motive and intention with which he killed his victim. Under the facts in this record proof of his mental condition by specific acts was not limited to his conduct immediately prior to and at the time of the crime. There was no contention that the appellant was insane so as to relieve him of criminal responsibility. "Where there is mental capacity sufficient to fully comprehend the nature and consequences of an act, and unimpaired will power strong enough to master an impulse to commit a crime, there is criminal responsibility." *Goodwin* v. *The State* (1884), 96 Ind. 550.

When insanity is an issue in a criminal cause, relevant acts and conducts of the person involved during his life are admissible.[3] There is equal reason for the same extensive inquiry into the abnormal mental condition of a sexual pervert when specific offenses are relevant, even though he is not insane. Proof of his particular abnormal mental condition was circumstantial evidence of his motive and intent in luring the decedent to his room and then killing him.

While the appellant was in custody at the police station, on September 5th, he answered certain questions which were asked by a member of the police department, which questions and answers were typed by another member of the police force. There was never any contention made that there was any force or duress of any nature whatever used before or at the time the statement was made, and the

---

[3] ". . . But it must be remembered that all of defendant's life was thrown open for investigation by this plea of insanity. . . ." *Baker* v. *State* (1921), 190 Ind. 385, 397, 129 N. E. 468.

witness, Donald Myers, who made the typewritten record of the questions and answers, was on the witness stand and identified the statement. Appellant refused to sign the statement until he had conferred with counsel. As a part of the state's evidence in chief, the state moved to introduce the typewritten record. The trial court asked counsel for the appellant if he had any objection to the admission of this statement, and counsel waived objections to its admission. No constitutional right of the appellant was violated, and if objection to the introduction of the statement had been made and sustained, the identical questions and answers could have been read to the jury by the witness Myers. *Keith v. State* (1901), 157 Ind. 376, 385, 61 N. E. 716. Nor was the state bound by the appellant's self-serving answers that he stabbed the decedent because he had attempted to rob him. The credibility of his statements was for the determination of the jury. *Hauk v. State* (1897), 148 Ind. 238, 46 N. E. 127, 47 N. E. 465; *Keith v. State, supra;* II Ewbank's *Indiana Criminal Law* (2d. Ed.), 341, 342, § 517.

The appellant places great stress on the alleged error of the trial court in refusing to strike out the statement made by the deputy prosecuting attorney to the jury on their *voir dire* examination wherein he read the statute on sodomy, § 10-4221, Burns' 1942 Replacement, to the prospective jurors. The objection was on the theory that it would be error for the state to prove the commission of other acts or offenses to prove the crime of murder in the first degree. The prosecutor then asked various members of the jury if evidence of that nature would be embarrassing against the state or the defendant in the case.

At the time the statute was read to the prospective jurors, there were two women in the jury box. The

evidence in this case was of a revolting and nauseating character, and in the interest of propriety it was better to use the designation of the statute. It was proper to inform the jury of the statutory definition of the acts, although it was not necessary to read to the jury the penalty as provided by the statute, which was a fine of not less than $100 nor more than $1,000 to which may be added imprisonment in the state prison not less than two years nor more than 14 years, but we are unable to see how the reading of the penalty provision of the statute to the jury was prejudicial to the appellant, since the penalty was much less than murder in the first degree. Evidently counsel for appellant did not consider the penalty feature as being prejudicial to the defense, for no objection was made to the questions on that ground. The state was not responsible for the unnatural acts and conduct of the appellant, and the jury was entitled to know the facts relevant to the murder even though they were shocking to our standards of morality and decency. The objection was in error in assuming that proof of other acts and offenses would not be relevant to the particular facts of this crime, and therefore the objection was properly overruled.

The appellant claims prejudicial error in the conduct of the deputy prosecuting attorney upon the argument to the jury predicated upon the alleged statement made by the prosecuting attorney which in substance asserted that in ancient times in England sodomy was punishable by death and referred to the ancient cities of Sodom and Gomorrah which were destroyed because the inhabitants practiced acts of sodomy.

"Sodomy was a felony at common law punishable by death." 58 C. J. 788, § 2. Sodomy was "named from the

prevalence of the sin in *Sodom." Ausman* v. *Veal* (1858), 10 Ind. 355, 356, 71 Am. Dec. 331. It was in this city "where the crime against nature had its origin, and was universally prevalent until that city was destroyed by the wrath of God." *Commonwealth* v. *Poindexter* (1909), 133 Ky. 720, 118 S. W. 943, 944. Gomorrah was destroyed at the same time for the same sin. Genesis Ch. 19; Jude 1:7; Wm. Smith, *Bible Dictionary* (1900 Ed.), p. 642. Both of these matters were of historical interest. "Matters of common and general public information and of known and settled history properly may be referred to and commented upon by way of argument and illustration. . . ." 16 C. J. 899, § 2245. See *Heyl* v. *State* (1886), 109 Ind. 589, 10 N. E. 916; *Combs* v. *State* (1881), 75 Ind. 215. The conduct of counsel in the presentation of argument to the jury is within the discretionary control of the trial judge in the first instance, and unless there is an abuse of this discretion which is clearly prejudicial to the rights of the accused, the ruling of the trial court should not be disturbed. *Soucie* v. *State* (1941), 218 Ind. 215, 31 N. E. 2d 1018; *Combs* v. *State, supra.*

A careful consideration of the entire record convinces us that the appellant received a fair trial and that the jury properly found him guilty of murder in the first degree as charged in the indictment. There has been no cause for reversal presented to this court and it is our duty to affirm the conviction.

The judgment is affirmed.

Starr, C. J., concurs in the result.

NOTE.—Reported in 83 N. E. 2d 769.