MYLES *v.* STATE OF INDIANA.

[No. 29,116. Filed February 15, 1955. Writ of Certiorari to U. S. Supreme Court denied May 20, 1955.]

*Clyde P. Miller,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Frank E. Spencer,* Deputy Attorney General, for appellee.

EMMERT, J.—This is an appeal from a judgment on a verdict finding appellant guilty of murder in the second degree. The grand jury of Marion County returned an indictment against the appellant charging in substance that in said county he, "Willie Buddy Myles," on January 26, 1947, with premeditated malice did kill and murder Jesse Avery by shooting him with a pistol thereby inflicting a mortal wound upon him from which he died January 31, 1947. Appellant fled the state and was not arrested on this charge until December of 1950, when he was apprehended by the Federal Bureau of Investigation in Omaha, Nebraska, and returned to the jurisdiction of the Criminal Court of Marion County, Division 2. On motion of appellant, the venue of the cause was changed to Morgan County,

where a jury trial was had. On January 23, 1952, appellant's motion for a new trial .was overruled, and we granted him the right to a delayed appeal.

The assignment of errors charges the trial court erred in overruling appellant's motion for a new trial, and it also seeks to assign error in the court's finding against him on a petition for a writ of error *coram nobis*, which was entered May 6, 1953.

It is not necessary to consider whether appellant can prosecute a joint appeal from a judgment on the verdict convicting him, and a judgment in a proceedings for a writ of error *coram nobis*. Since the assignment of errors here was not filed until February 23, 1954, which is more than ninety days limited by Rule 2-40, and no leave was granted by this court to perfect a delayed appeal on the *coram nobis* issue, no error is properly presented as to the denial of the petition for the writ.

Appellant's motion for a new trial questions the sufficiency of the evidence to sustain the verdict. "After conviction, we only consider the evidence most favorable to the state, and all reasonable and logical inferences that may be drawn therefrom. *Keith* v. *State* (1901), 157 Ind. 37, 61 N. E. 716; *Badgley* v. *State* (1949), 226 Ind. 665, 82 N. E. 2d 841; *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769." *Todd* v. *State* (1954), 233 Ind. 491, 121 N. E. 2d 726. We have carefully examined the entire record, and the jury was fully justified in finding the state had proved beyond a reasonable doubt the following facts:

Estella Rose owned a home at number 332 Agnes Street in Indianapolis, and she rented a room adjoining her bedroom to Alleene Craig, for $6.00 a week. Estella Rose was living with appellant, Willie Eddie Myles,

nicknamed Buddy, and Alleene Craig was living with Jesse Avery, neither of the women being married. The night before the shooting T. C. Bolden and his friend Maggie Haase had slept all night in a day bed in Miss Craig's room.

On Saturday night, January 25, 1947, Estella Rose and appellant had gone to bed before Alleene Craig and Jesse Avery returned to the house about 11:00 P.M., with T. C. Bolden and Maggie Haase. The latter couples had been to two taverns and drunk some beer.

Appellant, before retiring, had written a note to Alleene Craig in substance demanding $1.50 extra if T. C. Bolden and Maggie Haase were going to share the room with Alleene Craig and the decedent. This note was placed in a 7-Up bottle, and left in Miss Craig's room. When it was discovered, Miss Craig went outside and in another door to the kitchen to find out about the note. Appellant said he wrote it, and Miss Craig returned to her bedroom. The decedent then started hammering on the door between the two bedrooms, and appellant told him not to break down the door, got out of bed and opened the door. His bedroom was dark, but there was a light in the Craig bedroom. An argument ensued, and something was thrown on the floor. As decedent turned to look, appellant shot him in the back with a Japanese pistol, the bullet penetrating the chest and liver and causing considerable hemorrhaging. It went across the room and broke a pitcher sitting on a sewing machine, and it was later found on the floor by the city police.

None of the witnesses saw any flash from the gun, but as soon as Avery was shot he said, "Oh, Buddy, you done shot me," and fell in a coal box in the corner of Miss Craig's room. He got up, went out the door and across the street to a house at number 331 Agnes

Street where he fell on the porch, and was laid on a swing by his friend Louis Denwitty. Before the witnesses left the bedroom appellant said to them, "Don't none of you say anything, if you do I'll kill all you s - - s o - b - - - - - s." Alleene Craig went across the street and called the police department. After the ambulance had taken decedent to the hospital she, with T. C. Bolden and Maggie Haase were taken to police headquarters for questioning. Estella Rose went home to her mother. Appellant left the neighborhood and threw the gun in a box near 1006 Vermont Street. It was never found by the police officers. Estella Rose sent the appellant $30.00 that night, and he immediately left the state. Police detectives went to the hospital, but by the time they arrived there appellant was in shock, and was hemorrhaging so badly he could not be taken to surgery. He was given transfusions and oxygen.

On Monday following the shooting decedent made a dying declaration to Michael Smyley, a detective sergeant, in which he said appellant had shot him, that he had no reason, and he didn't know why. Decedent died the following Friday.

Appellant asserted the shooting was done in self-defense. The evidence was conflicting on this issue, and the credibility of the witnesses was for the jury to determine. *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769; *Hauk* v. *State* (1897), 148 Ind. 238, 46 N. E. 127; 47 N. E. 465; *Keith* v. *State* (1901), 157 Ind. 376, 61 N. E. 716; Ewbank's Indiana Criminal Law (2d Ed.) 341, 342, §517. Malice may be presumed from the intentional use of a deadly weapon in such a manner as is likely to cause death. *Stice* v. *State* (1950), 228 Ind. 144, 89 N. E. 2d 915; *Mosier* v. *State* (1942), 219 Ind. 669, 40 N. E. 2d 698;

*Perkins* v. *State* (1934), 207 Ind. 119, 191 N. E. 136; Ewbank's Indiana Criminal Law (2d Ed.) §889, p. 672, and authorities cited therein. The verdict was sustained by sufficient evidence and was not contrary to law.

The verdict was returned in open court June 16, 1951, at 12:24 A.M., when appellant and his counsel were present. The record discloses the appellant requested the jury be polled, and the record states, "And said Jury was polled and each juror is requested to state whether or not the verdict returned is his or her individual verdict and each juror replies to said question in the affirmative and said jury is now discharged."

Later on said date at 10:36 A.M., defendant was brought in open court for sentence, and pursuant to §9-2205, Burns' 1942 Replacement, appellant was asked if there was any reason why the court should not pronounce judgment on the verdict. Then for the first time his counsel questioned the validity of the verdict for the reason two jurors said it was conditional upon leniency being shown.[1] In his verified motion for new trial, appellant charged seven jurors when polled stated it was their verdict, "provided the court would show leniency to the defendant." However, at no place is it contended that appellant's counsel objected to the return of the verdict immediately after the jury was polled and before its discharge.

There is no contention appellant was not represented by competent counsel, and assuming without deciding that each juror did not say it was his verdict, it was the duty of appellant to object to its return before the jury was discharged. If the

1. "I might say this, Your Honor, that in view of the expression of the jury in this case, especially the juror, Mrs. Lewis, that the verdict was conditioned upon leniency being shown and Mrs. Brown likewise." This was the statement made by counsel at time of sentence.

court's intrinsic record did not correctly state the proceeding at the time the jury was polled, it was the duty of appellant to bring the matter into the record by a special bill of exceptions, *Medler* v. *State ex rel. Dunn* (1866), 26 Ind. 171, 172,[2] or by other proceedings to compel the court to correct its intrinsic record if appellant was prejudiced thereby. *State ex rel. Eggers* v. *Branaman* (1932), 204 Ind. 238, 183 N. E. 653.

Judgment affirmed.

Gilkison, C. J., Bobbitt, Levine and Achor, JJ., concur.

NOTE.—Reported in 124 N. E. 2d 205.

2. "It is claimed that the jury was polled, and that a juror answered that 'the verdict was not his judgment, but he only agreed to it.' The record does not show this. It was, if true, a matter occurring in open court and a part of the proceedings, and should have been shown by a bill of exceptions. It appears by a sworn statement, in a written motion for a new trial, that 'when a juror was polled' he made the answer already stated, as the defendant 'is informed and believes.'" *Medler* v. *State ex rel. Dunn* (1866), 26 Ind. 171, 172.