NEW YORK CENTRAL RAILROAD COMPANY *v.* WAGNER.

[No. 19,245. Filed October 19, 1962. Rehearing denied November 16, 1962. Transfer denied April 24, 1963.]

*Marvin A. Jersild,* of Chicago, Illinois, *Owen Crumpacker, Theodore M. Gemberling, Lowell E. Enslen, George V. Burbach* and *Crumpaker, Gemberling & Enslen,* all of Hamond, for appellant.

*Spangler, Jennings, Spangler & Dougherty, Harry J. Jennings, Herbert L. Fehner,* all of Gary, *Charles T. Clifford,* and *Chester, Clifford, Hoeppner & Houran,* of Valparaiso, for appellee.

BIERLY, J.—Appellee brought this action against appellant to recover damages for personal injuries allegedly sustained by her as a result of appellee's husband, John Wagner, driving his automobile, in

which appellee was an alleged guest passenger, "into the supporting post of a railroad viaduct over Chase Street, Gary, Indiana." The accident happened at approximately 9:30 p.m. on September 24, 1954.

From a verdict by a jury and a consistent judgment thereon in favor of appellee, appellant perfected this appeal, assigning error by the trial court in overruling the motion of defendant-appellant for a new **trial.**

Thirteen specifications for a new trial urge pertinent errors of law relative "to the giving of instructions to the jury and the refusal of the trial court to take certain issues from the jury." Appellant argued Specifications Nos. 1, 2, 3, 4, 5 and 10, hence the remaining are deemed waived and will not be considered.

Appellant stated the issues thus:

"The issues, as formed by the complaint and answer in two paragraphs, were alleged negligence on the part of the defendant in failing to have a warning sign, lights, or devices to indicate the presence of its bridge abutment and pier, in failing to light the post of upright support of the viaduct, in maintaining the bridge abutment, post and upright support with a dark color that blended into the color of the pavement, in failing to illuminate the post, upright support and abutment of the viaduct, in failing to maintain a warning light or warning sign on or about the post, in failing to have reasonable adequate reflectors on the post of such size, location and construction as to be seen by a reasonably prudent person operating a vehicle on the street during the hours of darkness, in failing to paint the posts, abutments, or supports a white color, in failing to paint the posts or supports with alternate black and white stripes, and in failing to have the exposed surface of the post, abutment or upright support painted in a color which was dis-

cernable to the traveling public so that it could be clearly seen.

"By an affirmative of answer, the defendant put in issue that the plaintiff was guilty of contributory negligence. These were the issues that were submitted to the jury."

Upon the jury returning a verdict on March 28, 1957, in favor of plaintiff in the sum of $8,750.00, the court entered judgment on April 8, 1957, as follows:

.   .   .   .   .

"It is therefore, ordered, adjudged and decreed by the Court that the plaintiff, Kay Wagner, do have and recover of and from the defendant, New York Central Railroad Company, the sum of $8,750.00, as damages plus the costs and accruing costs of this action, all without relief from valucation (sic) and appraisement laws as per the verdict of the jury."

The record discloses that in the city of Gary there is a public highway and street designated as Chase Street which extends in a northerly and southerly direction in said city of Gary; that appellant railroad engages in interstate commerce and maintains a viaduct constructed in a general east and west direction over and above said Chase Street.

Chase Street was paved with black asphalt to an approximate width of 48 feet curb to curb, and except the underpass, was sufficient to and did accomodate four lanes of traffic, two of which were assigned for north bound and two for south bound traffic. Four sets of creosoted posts support the viaduct. These were approximately twelve (12) inches in diameter. One set of posts was erected about six feet from the east curb, a second set was placed at a distance of about six feet from the west curb. The position

of the two remaining sets divided the traveled portion of the underpass into three lanes of traffic. By this arrangement the four lanes of travel on Chase Street emerged into three lanes in negotiating the underpass. Approximately 328 feet south of the underpass, a railroad grade crossing, with a grade level of about 9 feet higher than the ground level must be negotiated by northbound traffic prior to entering the underpass. This particular viaduct, in a street opening procedure advanced by the city of Gary, was completed and placed in operation in 1924 after plans and specifications were agreed upon by the said city and the appellant.

At the time of the accident, on September 25, 1954, at about the hour of 9:30 p.m., the evidence discloses that appellee was a passenger in an automobile operated by her husband, John R. Wagner, hereinafter designated as Wagner. Just prior to the accident according to the evidence, Wagner had approached from the south of said grade crossing at a speed of about 20 to 25 miles per hour; that "He saw no signs, markings, lights or other warning devices prior to striking a post supporting the viaduct in the traveled portion of Chase Street." (Appellee's Brief, page 5.)

On appeal "only the evidence most favorable" to appellee "and all reasonable and logical inferences that may be drawn therefrom, will be considered by this court, . . . ." *Badgley* v. *State; Brown* v. *State* (1948), 226 Ind. 665, 668 82 N. E. 2d 841.

Wagner testified that he remembered going up a grade, across the tracks and down again. That in answer to a question as to the condition of the Michigan Central tracks, he said:

"Well, the tracks—I don't recall how many tracks there were—were very bumpy, and the crossing was exceptionally rough. In fact, I noticed the lights flickering as I was going over bumps. As I was going over the tracks the car was veering to the left, momentarily. However, right after the tracks there seemed to be a drop-off or dip and I immediately started the car right out and continued driving right on."

Wagner further testified that as he made the bumpy, rough crossing he applied his brakes and lessened his speed to not more than five miles per hour, but after negotiating the tracks he increased his speed to twenty to twenty-five miles per hour; that no markings or signs or road lanes were evident along the highway but it was "pitch black"; that suddenly the viaduct came at him and his car struck it in a split second before he could apply his brakes; and, that he held his car under control.

Undisputed evidence disclosed that the bridge over the underpass was of wooden construction, as likewise were the creosoted posts supporting the trestle structures. But the supporting creosoted posts were of a black color devoid of any alternating black and white stripes. Wagner further testified that he saw no light under the bridge nor were there any warning signs on the approach to the bridge.

Witness for appellee testified that as the four lane street merged to a three lane on entering the underpass, it would be impossible for any operator of a vehicle to continue in any one of the four lanes on entering the underpass but must veer to right or left for that purpose in order to avoid striking a supporting post of the viaduct.

On cross-examination, Wagner testified he had not used the underpass prior to this occasion; that his

car went out of control on crossing the railroad tracks.

Evidence was presented disclosing that the city of Gary, prior to 1924, took the initiative to open Chase Street necessitating excavation for underpass on appellant's right of way. This required a bridge for the support of railroad tracks and supporting posts for the bridge or viaduct. A Resolution adopted by the city of Gary as shown by exhibit of defendant required the defendant "to construct a trestle bridge and the city of Gary agreed to depress, grade, drain subway and pave the street." The City Engineer and County Engineer directed the "location of the supporting posts in the street to be built under the tracks." The railroad provided creosoted supporting timbers in 1924 "in accordance with the plans and specifications approved by the Engineers" aforesaid. Changes had not been made in the supporting timbers since their installation except that produced by the accident.

Appellant earnestly argues no negligence on its part by insisting that all installations of bridge, trestle and supporting posts were constructed in a lawful manner and in full compliance with agreed plans and specifications; that the presence of the supporting posts in the underpass were legally and lawfully located; that the defendant was not legally responsible for such damages because of the existence of the supporting post or the location of the same; that upon the basis of the location of said supporting post or posts, with approval by the city, evidence failed to establish any legal duty appellant owed appellee and that no legal duty was breached by appellant.

Appellant, while contending that the "exact point in issue has never been precisely determined in Indiana,"

cites in support of nonliability for the erection of said "supporting posts in the process of the construction of the street by the City or maintaining them in the *subsequently paved public street* after their erection," *Lorentz* v. *Public Service R. Co.* (1926), 103 N. J. L. 104, 134 Atl. 818, 49 A. L. R. 989. In this case the appeal court reversed the trial court upon alleged error because the trial court failed to direct a verdict in favor of the defendant. The New Jersey Court of Errors and Appeals on this question at 991 of 49 A. L. R. said:

> "It is significant that neither in the trial court nor this court has the industry of counsel produced one decision in which recovery was had because of collision with a legalized permanent obstruction in a highway, apart from some special misuse of such structure."

At 993 of 49 A. L. R., the court said:

> "... Structures of this kind, authorized by law and used to facilitate public travel, although they are physical obstructions to drivers of ordinary vehicles, and, perhaps, to pedestrians, are, nevertheless, not nuisances, and the public must take notice of them."

Our attention is directed by appellant to the case of *Murphy* v. *Great Northern R. R. Co.* (Minn. 1933), 189 Minn. 109, 248 N. W. 715, where plaintiff alleged negligence by defendant to have "an effective reflector on the center pier" of an underpass. The appeal court in reversing the trial court's verdict held that though

> "... It may be that center pier-bridges involve such elements of danger that they should not be permitted; but the statutes specifically authorizes them. Under the Constitution and the statutes, the Highway Department undertook to do what it did do, and the railway company did all that was required when it built the bridge. ..."

The court stated the evidence failed to justify a finding that the defendant was liable "because of an improperly maintained reflector." See *Delaware, L. & W. R. Co.* v. *Chiara* (1938), 95 F. 2d 663.

Appellee cites with emphasis, a part of §36-1701, Burns' Ind. Stat., 1949 Replacement, Vol. 7, Part 2, though a railroad has the right to construct ■ tracks across a highway, this must be done "in such a manner as not to interfere with the free use of the same and so as to afford security for life and property." With this statement we are in accord. In the case of *Indianapolis, etc., R. Co.* v. *Sample* (1915), 58 Ind. App. 461, 108 N. E. 400, the court held that a railroad, even in the case of a lease, had a statutory duty to maintain a crossing in a reasonably safe condition for travel." In this case the question at issue was a street level crossing. The court in a case entitled *Clawson* v. *Central Hudson Gas & Electric Corp.* (1948), 298 N. Y. 291, 83 N. E. 2d 121, held that even though the state had constructed a new roadway and steel bridge "upon which ice formed due to mist and spray from the dam" and which bridge had replaced an old bridge, yet the appellant must maintain its dam in such a manner "that it would not interfere with or endanger safe passage on the adjacent highway."

Appellee also cited *The Louisville, New Albany and Chicago Railway Company* v. *Smith* case (1883), 91 Ind. 119, where the court held it was the duty of the appellant to maintain its crossing at a public highway thereby providing "security for life and property." This case involved a damage suit for $100.00 due to injury to a horse at a defective railroad crossing on a highway. This is sound law comparable to a duty imposed on property owners to keep side-

walks in such condition so as to prevent injury to pedestrians lawfully entitled to use the same. We fail to see the applicability of these three previously mentioned cases to the liability of appellant in the case at bar involving an underpass.

The city of Gary as pointed out heretofore, was vested with power of eminent domain to appropriate and condemn land for right of way for street purposes, and "to compel a separation of grade." Following an accomplishment of that purpose, §48-3511, Burns' Ind. Stat., 1950 Replacement, Vol. 9, Part 1, states:

> "48-3511. Maintenance of street and structures. —After the construction of any such separation, the city shall maintain the street and structures supporting it where the street is carried over the railway, and the railway company, or companies shall maintain its or their roadway and tracks and the structures supporting same, and in the event the street is carried under the railway, the said city shall maintain the street and the railway company or companies shall maintain its or their roadway and tracks and the structures supporting the same." [Acts 1923, ch. 36, §11, p. 110.]

By a subsequent act it is provided that relative to a construction of an underpass involving a railroad the "public authority or municipality having jurisdiction over such street or highway, shall maintain the street or highway, and the drainage thereof, and the railroad or railroads shall maintain its or their roadbed and tracks and structures supporting the same." [Acts 1939, ch. 41, §2, p. 167.]

Both appellant and appellee gave liberal discussion to §36-1615, Burns' Ind. Stat., 1949 Replacement, Vol. 7, Part 2, which reads as follows:

> "Bridges and physical objects on highway— Painted white.—When any bridge, guard-rail,

post, abutment, head wall, upright support or any other permanent physical object *which is now or may hereafter be installed on or within the roadway of any highway or street in this state, or which may be installed or located in such close proximity to the traveled part of such roadway that the traffic thereon might be endangered thereby or collide therewith,* is painted or repainted, so much of the exposed surface of that part of such bridge, rail, post, abutment, head wall, support, or other object projecting above the surface of such public highway or street as may be necessary to reveal clearly the presence of such object to the traveling public shall be painted of no other color than white for its outside surface: Provided, That, if so desired, the surface of such objects may be so painted that black and white stripes shall alternate." [Acts 1925, ch. 114, §1, p. 288. ]

In a recent opinion by this court in a case entitled *New York Central Railroad Company* v. *Sarich* (1962), 133 Ind. App. 516, 180 N. E. 2d 388, (transfer denied June 22, 1962), the judgment of the trial court in favor of the appellee was affirmed. Herein the automobile driven by appellee, crashed into the same viaduct located on Chase Street in the city of Gary, and as a result therefrom, the guest riding in said automobile was killed. Judgment was rendered in favor of appellee.

The issue in said cause was submitted to the jury on a single allegation of negligence, and for a determination as to whether the appellant railroad failed to comply with the statutes (§36-1615, Burns', 1949 Replacement), *supra,* relative to the painting of objects within the roadway of a public highway.

In the consideration of §55-601, Burns' 1951 Replacement and §§36-1615, *supra,* and 36-1701, *supra,* the court in the *Sarich* case said:

"In analyzing the pertinent parts of the above statutes, we conclude there was statutory authority for the railroad, in the instant case, to construct its overhead structure subject to certain conditions. However, there was also a statutory duty on the appellant to maintain the structures supporting its roadbed and tracks. The paint statute involved in the instant case, [§36-1615, Burns' 1949 Replacement], provides that posts and other obstruction on the roadway of highways shall be painted white or black and white in alternate stripes. While it is true that this statute does not in express language state upon whom the duty to do this painting rests, it is our opinion that since there is a statutory duty on the appellant to maintain the structures, the duty to paint the structures in a certain manner as prescribed by the above statute rests upon the appellant. . . ."

The accident in above cited Sarich case happened on February 11, 1954, while the accident in the case at bar occurred on September 24, 1954. Section 36-1615, Burns' Ind. Stat., *supra*, was enacted by the 1925 General Assembly, and in full force and effect April 25, 1925. Since this is the case, both the Sarich case and the case at bar are in the same category relative to the time of the so called paint statute, Section 36-1615, *supra*. In each case the defendant was charged by the plaintiff with the violation of said paint statute and judgment was rendered against the defendant in each case and damages awarded plaintiff.

The several instructions complained about by appellant in its Specification No. 10 of its motion for a new trial covered, to all intent and purposes, the same subject matter as those considered and dealt with in the said Sarich case. It is, therefore, of no advantage to now reiterate what was said with reference thereto.

In light of the opinion of this court in the Sarich case, we have no alternative but to conclude that the judgment in the case at bar must be affirmed.

Judgment affirmed.

Kelley, C. J., Gonas and Pfaff, JJ., concur.

NOTE.—Reported in 185 N. E. 2d 537. Transfer denied, Jackson, C. J.; Achor, J., dissents.